WHITING, McKENNA & Co. v. ROOT.

FARWELL & Co. v. SAME.

HURST, SWEGGERT & Co. v. THE SAME.

1. **Contract:** CONSTRUCTION OF: FACTS CONSIDERED. A contract construed in the light of the facts in evidence, and held to obligate one of the parties to assume certain indebtedness of the other party, in payment for a stock of goods purchased.

2. **Practice:** EQUITABLE JURISDICTION. Where the pleadings in an action present an equitable issue, and equity has taken cognizance of the case, it will not refuse to grant relief, though it appears from the facts found upon the trial that a remedy could have been had in an action at law.

3. **Practice in the Supreme Court:** JUDGMENT: APPEAL. Where a judgment is correct it will not be reversed on appeal because based upon a view of the facts different from that taken by the Supreme Court.

*Appeal from Clarke District Court.*

TUESDAY, OCTOBER 28.

THESE actions were commenced at law, but upon the filing of amended petitions were transferred to the chancery side of the court.

The causes were sent to a referee and judgment for the plaintiff rendered upon his report. Defendant appeals. The facts appear in the opinion.

*J. C. Power, Henry Stivers* and *W. M. Wilson,* for appellants.

*Stuart Bros.,* for appellees.

BECK, CH. J.—The cases were presented together upon substantially the same abstracts and arguments.

The petition of plaintiffs, in the first case, alleges that Mintonye & Lee executed to them two promissory notes, each for the sum of $760, for goods to supply a store which they were

keeping.   Mintonye owned most of the capital invested in the
business and a valuable storehouse and lot upon which it was
situated, which were occupied by the firm.   They were largely
indebted and desirious of making such a disposition of their
property as would secure the payment of their debts.   In pur-
suance of this purpose Mintonye sold the stock of goods owned
by the firm, and the storehouse and lot, to defendant, and en-
tered into a written contract with him which will hereafter ap-
pear.   The petition recites, at great length, the circumstances
under which the contract was executed, and charges that the
defendant procured the execution of the instrument on the
part of Mintonye by fraud and misrepresentation, and by put-
ting upon it an interpretation in accord with the agreement of
the parties.   It also alleges that a large part of the agreement
of the parties was omitted from the instrument by defendant,
who wrote it, for fraudulent purposes, and that it was the in-
tention of the parties that defendant should become bound to
pay the debts of Mintonye and Lee, contracted in the course
of their mercantile business.   It is not necessary to refer more
fully to the allegations of facts contained in the petition.
Plaintiffs claim that under the contract for the purchase of the
property defendant became bound to pay the claim against
the firm.

The answer of defendent put in issue the allegations of the
petition.   The referee made report of his findings of fact and
law in the case first named, which we present entire, as it is
found in the abstract, for the reason that it fully discloses the
facts of the cases.   We understand a like report was made in
each of the other cases.   It is as follows:

"From the evidence in this case I find the following facts:

"*First.*   In the month of March, 1876, two of the defend-
ants, H. E. Mintonye and George Lee, were selling goods in Os-
ceola, Iowa. They occupied a store room in a brick building on
the east side of the public square in Osceola, Iowa.   Lee had
all his capital invested in the business and Mintonye had equal
capital invested.   Mintonye owned the building in which the
store was situated, a three story brick house with cellar under-
neath.   The lower story and cellar were occupied as the store

room.    The second floor contained offices, and the third floor was used as a public hall.    The value of the building and ground was nine thousand dollars.

"*Second.*    R. T. Root, the other defendant, was at that time a citizen of Burlington, Iowa, engaged in the publication of a book entitled " Foot Prints of Time."    His business seems also to have embraced the sale of territory in the United States, for the sale of the above mentioned book to agents who were authorized to sell the books within the territory, Root furnishing the book to such agents as ordered by them at a stipulated price.

"*Third.*    At this time, viz:    The month of March, 1876, the firm of Mintonye & Lee seems to have been in embarrassed circumstances, and heavily burdened with debt.    Mintonye was in poor health and seemed to anticipate an early death, and was extremely anxious to protect his credit and preserve his creditors from loss.

"*Fourth.*    Lee, the other defendant, had been to Mt. Pleasant seeking to sell the stock of goods for the payment of the creditors.    Such a conversation was had by Lee with one Gamage, of Mt. Pleasant, as led Mintonye, although feeble in health, early in March to repair to Mt. Pleasant, in the hope of selling out to Gamage.

"*Fifth.*    Mintonye went to Gamage's house in Mt. Pleasant, and for a time there was a prospect of a sale to Gamage.

"*Sixth.*    On the 8th of March, 1876, Mintonye and Gamage started to Burlington, Gamage desiring to obtain a loan from a friend in Burlington, to enable him to consummate the trade with Mintonye & Lee.

"*Seventh.*    At New London, on their way to Burlington, they met J. S. Wertz, who had previously had business relations with R. T. Root, who returned to Burlington with them.    Failing to obtain money from Gamage's friend, the three, Gamage, Wertz and Mintonye went to Root's office to see if he could aid them.

"*Eighth.*    While there Mintonye and Root made a contract which was reduced to writing, and was in words and figures following, to-wit:

'BURLINGTON, IOWA, MARCH 8, 1878.

'Contract between R. T. Root, of Burlington, Iowa, and H. E. Mintonye, of Osceola, Iowa:

'Witnesseth, said Mintonye agrees to make said Root a warranty deed, clear from all incumbrances (except a claim of $3,000, held by Julia Clark, of Mass.), of property in Osceola, Iowa, and described as follows: Part of lot (3), including hall, in block 13, in the town of Osceola, Clarke county, Iowa, and also transfers and conveys a general stock of goods in a building on the lot named, amounting approximately to ten thousand ($10,000) dollars, and including in this notes and accounts due the said Mintonye on goods got from the said store, subject, however, to claims against said stock amounting to about eight thousand ($8,000), and said goods to be invoiced at present value, and if the claims amount to more than the goods invoice for, said Mintonye is to pay off the same, and if the goods amount to more than the claims the said Root shall pay the said Mintonye the excess, as follows: To give for each thousand dollars a territory of fifteen thousand inhabitants to sell a certain book hereinafter named, and each fractional part of a thousand of excess of the claims aforesaid shall be *pro rata*, and the said Root, on his part, agrees to give said Mintonye the exclusive right to sell the Foot Prints of Time, by Bancroft, in a population of two hundred and seventy-five thousand (275,000) inhabitants, which said Mintonye may select in any place he chooses by taking a county in a place, out of any territory not otherwise arranged for, and the said Root agrees that if the said Mintonye does not want to take territory for the excess of goods above the claims he need not do so, but can retain the same from the goods.

'Witness,                          R. T. ROOT,
    J. S. WERTZ.                    H. E. MINTONYE.'

"*Ninth.* The contract after being reduced to writing was read over to Mintonye, and he expressed himself satisfied and signed the same, and was present when Wertz signed the same as witness, except that Mintonye called Root's attention to the fact that the contract was silent as to Root's agreement that

he would advance one thousand dollars, and three thousand dollars in thirty days. Root replied that was all right, he would carry out the contract in good faith.

"*Tenth.* The next day after the contract was made, by agreement Wertz and Gamage proceeded with Mintonye to Osceola, and took an invoice of the goods with the following result:

| | |
|---|---:|
| Goods, furniture and fixtures | $10,990.97 |
| Notes collectible | 180.97 |
| Accounts | 2,248.92 |
| Town orders | 43.43 |
| Total | $13,464.29 |
| Liabilities or claims of creditors | 11,434.57 |

"Amongst the claims listed and making up the amount above set forth is the claim of Whiting, McKenna & Co., plaintiffs in the case under consideration.

"*Eleventh.* Wertz took charge of the goods as Root's agent and proceeded to sell the goods. He paid some bills and bought some goods, until on the 9th day of June, A. D. 1876, in the case of Whiting, McKenna & Co., and on the 16th day of June, 1876, in the case of Jno. V. Farwell & Co., attachments were sued out and an approved bond to perform judgment given by Root, one of the defendants, and J. Scarff, George Sweeney, D. W. Hixson and Warren Dee, sureties on such bond, and the goods released.

"*Twelfth.* *    *    *    *    *    *    *    *

"*Thirteenth.* There is due from Mintonye & Lee to Whiting, McKenna & Co. the sum of seven hundred and sixty-one dollars and forty cents, with six per cent interest from February 4, 1876, less $161.40 paid February 7, 1876, and $200.00 paid February 24, 1876, and seven hundred and sixty dollars with six per cent interest from March 4th, 1876, and seven hundred and sixty dollars with six per cent interest from April 4, 1876, and seven hundred and sixty dollars with six per cent interest from May 4, 1876, and current exchange on Boston or New York.

"*Fourteenth.* I find no evidence of fraud or misrepresentation

in the trade or contract, on the part of either of the parties to said contract. It was written in the words intended and agreed upon between the parties.

"*Fifteenth*. No one of the claims against Mintonye & Lee were liens upon the goods, that is to say, there were no mortgages, attachments or liens of any kind upon the goods at the time of the sale.

"*Sixteenth*. Root has paid certain claims held by creditors of Mintonye & Lee, but there is no evidence that he has ever paid anything upon the claims of the plaintiffs in this case.

" From these facts I conclude that the purchase of the goods subject to the claims against them, they not being liens, and the stipulations that the goods should be invoiced at their present value, and, if the claims amount to more than the goods, then Mintonye is to pay off the same, and if the goods amount to more than the claims then Root is to pay Mintonye the excess, by fair construction, makes a promise on the part of Root to pay all claims if the goods amount in value by invoice to enough, if not to pay the invoice. The acts of the parties also sustain this implication. The words of the contract, though ambiguous and not clearly expressed, do imply such a promise. The idea of a trust is excluded by the stipulation that, if the goods do not invoice for enough to pay the debts, Mintonye is to pay the same, these words being a limitation of the liability of Root to pay the claims. Also the absolute sale of the realty by warranty deed excludes the idea of a trust.

"2. A promise to one, for the benefit of another, gives that other person a right of action on the promise, and hence an agreement made by Root that he would pay Mintonye & Lee's claims results to the benefit of the holders of such claims, subject to the limitations and stipulations of such promise.

"3. It appearing from the invoice that the value of the goods is largely in excess of the amount claimed by these plaintiffs, I find that Whiting, McKenna & Co., are entitled to a judgment against Mintonye & Lee, and Root, for the amount set forth in my thirteenth finding of facts, with current exchange as therein set forth.

"4. That R. T. Root having released the goods from attach-

ment by filing a bond in each case to perform judgment, with J. Scarff, George Sweeney, D. W. Hixon and Warren Dee, sureties, the fund is to be regarded as in court, and the judgment should in each case go against the aforementioned sureties as well as against Mintonye & Lee and R T. Root."

The defendant excepted to the. report of the referee, on the ground that the facts found did not support the conclusions of law adopted by the referee, which hold defendant liable. It does not appear from defendant's abstract that he entered any exceptions in the court below to the findings of fact as reported by the referee. The exceptions taken to the conclusions of law reported by the referee were overruled, except as to the conclusion that defendant did not hold the property as a trustee. The decree of the court is as follows:

"Now this cause having heretofore been submitted upon the motion of both plaintiff and defendant Root, as before mentioned, and the court being advised in the premises overrules the motion of defendant Root, except as to fifth clause of said motion, in reference to which the court holds that from the written contract (the court not having examined the other evidence in the causes) it appears that the defendant Root held the property obtained from Mintonye & Lee as trustee, and that so far as the report of the referee holds differently the same is set aside.

"But the court also holds that Root violated his duty as trustee, and that this action can be maintained against him. To the finding of the court that Root was a trustee, and the modification of the referee's report in that particular, the plaintiffs except, and to the finding of the court that Root had violated his trust, and was liable to plaintiffs in this action, the defendant Root excepts.

"As to all other matters contained in the report of the referee, the court approves and affirms the same, both as to matters of fact and law, and overrules the motions of both plaintiffs and defendants so far as they strike at said report, or seek to set it aside, to which ruling in overruling their said motions both plaintiffs and defendant Root except. And

the court sustains the motion of the plaintiffs for judgment upon the report of the referee."

II.   The abstract of the defendant does not contain the testimony upon which the case was tried before the referee and court.   He does not bring the case here for trial *de novo*, but assigns as errors the action of the court in overruling his exceptions to the report of the referee, and in rendering judgment on the report.

The plaintiffs claim that the cause is triable here *de novo,* and they file an abstract containing all the testimony.   The question is thus presented, whether the cause is triable anew in this court, or must be heard upon errors assigned upon the record.

It has been stated that defendant filed no exceptions to the facts as found by the referee, neither does it appear that plaintiff raised objections thereto in the court below.   There appears to have been no contest in the court below over the report of the referee, so far as the facts of the case are concerned.   In view of the fact that defendant is satisfied with a review of the cause upon the errors assigned, indeed, insists upon it, and brings the cause here for no other purpose, and that, considering the case upon the errors assigned as presented by the record, we find no ground for disturbing the decree of the court below, we think the cause may be tried here upon the errors.   Defendant insists upon this form of trial; plaintiffs can receive no prejudice therefrom, for the judgment, which is in their favor, will be, upon such a trial, affirmed.

III.   The plaintiffs raise several questions based upon the alleged facts that notice of the appeal has not been served upon all the parties, that defendant has failed to furnish a proper abstract, etc., which need not be considered, in view of the disposition we make of the case.

IV.   We come now to the consideration of the objections raised by defendant's assignment of errors, and presented in

1. CONTRACT: construction: facts considered.

the argument of his counsel.   They, taken together, amount to the single point that the facts found by the referee do not support the judgment rendered by the court.

It will be observed that the conclusion of the referee that plaintiffs are entitled to judgment is really based upon the construction which he gives to the contract between defendant and Mintonye, in the light of facts found by him. We are well satisfied that this construction is correct. A few words, we think, will be sufficient to vindicate the correctness of our conclusion.

It will be understood that the instrument is a contract of sale. Defendant purchases the property therein named, of Mintonye. No question arises in regard to the sale of real estate named therein, and no notice need be taken of it, except so far as the stipulations in regard thereto may throw light upon the intention of the parties, and serve to aid us in the interpretation of their language.

Defendant being the purchaser of the stock of goods, we must expect to find that he agreed to pay for them in some manner. We will put no interpretation upon the instrument that will give him the goods without his paying for them, unless such an intention is clearly revealed by the language of the contract. We will notice the language carefully.

Mintonye "transfers and conveys" to defendant, goods supposed to be of the value of $10,000, and certain choses in action. It is then said that the sale is "subject to claims against the stock amounting to $8,000." The instrument then provides that the goods are to be "invoiced at present value."

This of course is to ascertain their value. It is next stipulated that "if the claims amount to more than the goods invoice for, Mintonye is to pay off *the same*, and if the goods amount to more than the claims, the said Root is to pay the excess." Now it is very clear that Root is to pay the claims, otherwise he would get the goods of the value of the claims without paying one cent therefor. If Mintonye is to receive from Root a sum only equal to the excess of the goods above the "claims," the value of the goods equaling the claims will be received by Root without paying anything therefor. The word *same*, in the expression "if the claims amount to more than the goods invoice for, Mintonye is to pay off the same,"

is used to express the excess of the claims over the invoice value of the goods. Any other view would permit Root, under the contract, to hold the goods without paying therefor the amount of the "claims."

The words "claims against the stock," clearly mean debts of Mintonye, contracted for the purchase of the stock. Many business men, not of course so expert in the use of language as in the affairs of business, speak of their "stock" as lawyers speak of a corporation. They keep accounts in which the stock has debits and credits. Bills given by them for the purchase of or to replenish the "stock," *i. e.*, their goods and merchandise in trade, are charged against the "stock." Accounts of this kind, we presume, are found in the books of many business men. It would be quite natural for the parties in stipulating for the payment of debts for goods to designate such debts as claims against the goods. But did Root agree to pay these debts? Certainly, unless we hold that he was to get the goods to the value of the amount of the debts without paying anything therefor—a very absurd result. The last provision of the contract is to the effect that Mintonye may take goods out of the store to the amount of the excess of the value of the goods over the "claims." Suppose he had so done and it is held that Root did not undertake to pay the "claims," how would Mintonye have been paid for the goods that Root obtained? There is no stipulation that Mintonye is to be paid for such goods by the right to sell the book, unless the parties have succeeded in hiding their intentions. The right to sell in a population of 275,000 was clearly intended to be in payment for the real estate named in the contract.

The word "claims" was not used in the contract to describe liens, for no liens against the goods existed.

We are satisfied that Root obligated himself by the contract to pay the debts of Mintonye, contracted for goods. It is not denied that the creditors whose debts Root undertook to pay may maintain an action against him.

V. The defendant insists that the finding of the referee is against plaintiff upon all issues; that as no fraud was found

equity had no jurisdiction, and that upon these grounds the judgment should have been against plaintiff.

We think the first position is not in accord with the facts. The original petition declared simply upon a contract of defendant with Mintonye to pay plaintiff's debts. The amended petition sets out, at great length, the fraud of Root as a ground of recovery. Upon this amended petition the cause was transferred to the equity docket. But we do not find that the original petition was withdrawn or superseded by the amendment. The finding of the referee supports plain-- tiff's right to recover under the original petition.

VI. If it be conceded that the facts found by the referee do not present a case of original equity jurisdiction, and this

*2. PRACTICE: equitable jurisdiction.* we think is true, yet equity having taken cognizance of the case will grant relief, though a remedy could have been had in an action at law. This is certainly true when no objection is raised, by the answer or otherwise, before the final hearing on the ground that the action. should have been prosecuted at law. We have discovered no such objection raised in defendant's answer, or in any other manner. See *Van Orman v. Merrill*, 27 Iowa, 476.

VII. It will be observed that the *reasons* given by the court below for the judgment it rendered differ from the reasons

*3. PRACTICE in the supreme court: judgment: appeal.* which lead us to the conclusion that the judgment in the plaintiff's favor is correct. The Circuit Court held defendant liable on the ground that he was a trustee and had violated the trust. We need not inquire whether the views adopted by the court below be correct, for, if we should conclude they were wrong, we would, nevertheless, affirm the judgment, which we think is correct, though based upon erroneous conclusions of the court below. We find the judgment supported by the facts found by the referee. It will not be disturbed because the *reasons* given by the court below in support of it are unsound.

The foregoing discussion disposes of all questions that we are required to determine. The judgment of the Circuit Court in each case is

AFFIRMED.