R. L. FARRELL, *Appellant,* v. FOREST INVESTMENT COMPANY, A CORPORATION, *Appellee.*

Opinion Filed January 31, 1917.

1. Where a Court of Equity hears and determines a controversy of such character that jurisdiction may be given by consent, and the parties without objection or question as to the mode of procedure go on to a hearing, neither should be heard to complain afterwards as to the court's jurisdiction.

2. Where a bill in equity has for its principal object a partition of lands, and other questions arise as to complainant's interests which are sought to be determined as incidental to the main relief, and such questions arose out of the relations existing between complainant and defendant at the time when

the incidents occurred giving rise to the differences between them, the court will determine the entire controversy.

3. A bill in equity is not necessarily multifarious because there may be united in it several causes of action. If all the different causes of action united in the bill grew out of the same transaction, and all the defendants are interested in the same rights, the bill will be maintained.

4. The objection of multifariousness when made for the first time at the hearing, will not be sustained where the real point in the controversy can be determined as well in the one cause as if there were many separate suits, and the objection does not appear to be so grave as to interpose an obstacle to the proper administration of justice.

5. In considering the question of multifariousness the matter particularly involved is convenience in the administration of justice, and if this can be accomplished by the mode of procedure adopted, an objection for multifariousness should not be allowed.

6. Where a Court of Equity takes jurisdiction of a cause for one purpose, it will proceed with the determination of all the matters presented.

7. Where a corporation entered into copartnership with an individual, and the copartnership transacted business and dissolved, and one of the copartners seeks a partition of lands held by the members of the partnership in common, the court will not consider the question of the validity of such copartnership where the interests of third parties are not involved.

8. The Chancellor's findings and conclusions on the facts will not be reversed unless it clearly appears that he erred in such conclusions.

9. Where an answer to a bill in equity is made under oath, the averments contained in it which are responsive to the bill, and set up facts to which other testimony could be received, are to be taken as true unless disproved by evidence of greater weight than the testimony of one witness.

10. A sworn answer is evidence in the defendant's favor in so far as its statements are responsive to the allegations of the

bill. Under Rule 41 of the Rules of Practice in the Courts of Equity of the United States as prescribed by the Supreme Court of the United States, and amended in 1871, which by statute were made the Rules of Practice in Courts of Equity in this State, the complainant in order to avoid the effect of an answer was required to expressly waive in the bill the oath of the defendant to the answer.

11. The new rules of practice for the Courts of Equity in the United States as promulgated by the Supreme Court of the United States in November, 1912, make no provision for the complainant waiving in his bill an answer under oath, and as the new rules abrogated the old ones, and as there is no provision in the rules prescribed by this court on the subject as applied to the practice in the courts of this State, a complainant cannot deprive the defendant of the benefit of his answer under oath by expressly waiving it in the bill.

12. A sworn answer does not have the effect of evidence in defendant's behalf as to averments of fact set up by way of affirmative defense, nor as to averments of fact which testimony would not be admissible to prove.

13. Section 2682 of the General Statutes of Florida, 1906, does not expressly prohibit a foreign corporation from bringing a suit in this State until it has complied with the requirements of the statute.

14. When the defendant desires to raise the question of a foreign corporation's right to maintain a suit in this State, the defense should be specifically made.

Writ of Error to Circuit Court for St. Johns County; George Couper Gibbs, Judge.

Decree affirmed.

*Statement.*

The Forest Investment Company, a foreign corporation, commenced its suit in the Circuit Court for St.

Johns County in November, 1913, against R. L. Farrell for partition of certain lands; to declare a trust in certain of them, and for an accounting for the proceeds arising from the sale of cypress timber taken from the said lands by the defendant.

The bill alleges that the complainant, Forest Investment Company, the appellee here, is a foreign corporation doing business in the State of Florida, "having duly complied with the laws pertaining to foreign corporations;" that the complainant and R. L. Farrell, the appellant here, are owners in fee simple as tenants in common of the following described lands, viz: All of Sections 5, 6, 7, 8, 16 and 18, and all of section 17 except the N. E. ¼ of S. E. ¼, all in T. 9 S. R. 29 E. in St. Johns County, and consisting of about 4447 acres of land. Also all Sections 32 and 33, and all of Section 31 except the W ½ of N. W. ¼ and S. E. ¼ of N. W. ¼ in T. 8 S. R. 29 E. That Farrell acquired the title to said land, except one hundred and twenty acres in Section 31 described as the S. ½ of S. W. ¼ and N. W. ¼ of S. W. ¼, from R. C. Wilson and wife, and conveyed to complainant an undivided one-third interest in it; that the one hundred and twenty acres above described were purchased by Farrell from the Model Land Company, a corporation, but that before the purchase Farrell represented to complainant the necessity for the purchase of that tract by complainant and Farrell, and after complainant agreed that it should be bought by Farrell & Company, in which complainant had a third interest, Farrell took the title in his own name; that four hundred dollars of the purchase price of the land was paid with the funds of the company, and complainant was ready to pay, and tendered, the balance of its part in the purchase price; that by reason of these facts complainant was

entitled to a third interest in the one hundred and twenty acre tract, and Farrell should be declared to hold the same in trust for complainant.

That the S. ½ of Section 8 T. 9 S. R. 29 E. was sold by complainant and Farrell to Charles Yelvington upon Farrell's representation that it was to their interest to sell. That it was sold for a price lower than its value, of which complainant was ignorant, and that after the sale Farrell within a month purchased it from Yelvington in his own name, and thereby sought to profit by the transaction at the expense of complainant. The complainant offered to return to Farrell the money received by it from the sale and claimed that by reason of this transaction Farrell should convey to complainant a third interest in said lands. The complainant prayed that both the above described tracts of land be included in the petition.

The bill also alleged that in February, 1911, the complainant conveyed to Farrell its "undivided third interest in the license and right to cut, box and work for turpentine purposes all the pine timber suitable for such purposes for a period of three (3) years" upon all the lands above described except the W. ½ of the N. W. ¼ and S. E. ¼ of N. W. ¼ of Section 31 in T. 8 S. R. 29 E. The bill further alleges that the lands above described are owned by the complainant and Farrell in common, the complainant having a one-third interest and Farrell a two-thirds interest; that Farrell has cut, removed and sold the cypress and other timber, other than the pine timber from the land without authority from complainant; that the proceeds have been applied to defendant's own use and never accounted to complainant for the same.

The bill waives an answer under oath and prays that the complainant may be decreed to have a third interest

in common with Farrell in the S. ½ of S. W. ¼ and N. W. ¼ of S. W. ¼ of Section 31, T. 8 S. R. 29 E. upon the payment by complainant to Farrell of two hundred and sixty-six and 67/100 dollars tendered as alleged; that Farrell be required to convey to the complainant a third interest in the S. ½ of Section 8, T. 9 S. R. 29 E. upon the payment to Farrell of the money received by complainant with interest as its share of the price of same received from Yelvington; that a partition of the lands be decreed to be made, and that if the land cannot be partitioned without injustice to the parties, that it be sold and the proceeds of the sale after paying costs and a reasonable attorney's fee be divided between the complainant and defendant according to their respective rights; that their rights be ascertained and declared, and that an account be taken of the cypress and other timber except pine timber, that has been cut, removed and sold by Farrell, and that he be decreed to pay to the complainant its part thereof that may appear to be due, the complainant on its part to pay to the defendant what if anything shall appear to be due from it to the defendant upon taking the account; that Farrell be restrained from collecting and receiving any money from the sale and disposition of any more cypress and other timber except pine timber from the said lands, and for general relief and subpoena.

The bill was answered by Farrell under oath, in which it was admitted that complainant and defendant owned Sections 5, 6, 7, 8, 16 and 17, except N. E. ¼ of S. E. ¼, and Section 18 in T. 9 S. R. 29 E. The answer denied that they owned any lands in sections 31, 32 and 33 in T. 8 S. R. 29 E. It avers that defendant bought the land in section 31 during the Spring of 1910 from the Florida East Coast Railway Company for the

sum of $1,200.00 upon the following terms, viz: one-third cash and interest on deferred payments; that defendant drew a draft on the Peninsular Naval Stores Company for $400.00 of the purchase price and the same was charged to the turpentine account of Farrell and Company; that about the same time he bought forty acres of land in Section 31 and gave his check for a third of the purchase price; that in February, 1911, he bought the turpentine interest of Farrell and Company from the complainant in which the draft for $400.00 was charged to defendant who paid the amount in full; that in 1911 he paid the Florida East Coast Railway in full and received a deed from the Model Land Company for the 120 acres; it denies that complainant has any interest in any lands in Section 31, and admits that defendant and his wife conveyed to complainant an "undivided one-third interest in and to the lands then owned by the defendant."

The answer denies that defendant in 1911 made any representations to the complainant as to the necessity for the purchase of the 120 acres in Section 31, but in 1910 defendant did represent the necessity of the purchase of the land for an outlet to their lands, but complainant complained of the price and defendant purchased it on his own account. It admits that complainant sold its interest in the turpentine licenses in 1911 as alleged, but that the account of Farrell and Company was charged to defendant in which the $400.00 paid for the 120 acres in Section 31 was included, and that when the sale was made all licenses had expired except upon Sections 6, 7 and 18, in T. 9 S. R. 29 E. It denies that complainant was ignorant of the value of the land sold to Yelvington, the S. ½ of Section 8, T. 9 S. R. 29 E., that the sale was made in good faith, as was also the sale back from Yel-

vington to defendant.    The answer avers that the sale was made because of the remoteness of the land from rail-road and postoffice conveniences, and sets out the facts attending the sale and reasons therefor, all of which it is alleged 'complainant had full knowledge.    It is averred that when the land was sold the log road of the Upchurch Lumber Company was regarded as the south line of the section, and the land was sold to Yelvington with that understanding between complainant and defendant; after the sale a survey showed that the line was further south and "took in the house" in which defendant was living; that defendant then purchased the land back from 'Yel-vington, paying him for all improvements he had made. "That this purchase had nothing to do with the partner-ship matters of R. L. Farrell and Company, and was done with the full understanding of petitioner and its of-ficers."    The answer denies that all the lands described in the bill are subject to partition, and denies that complain-ant has a third interest in *all* of the lands described in the bill.    The answer denies the allegations of the bill as to ownership in common between complainant and defend-ant of the lands described; that the defendant has tried to make a settlement with complainant of the "personal and real property in which it has an interest," but the com-plainant has refused all offers of the defendant.    It ad-mits that the defendant has cut the cypress timber from the lands to the extent of about "34,000 or 35,000 ties," but that the cypress timber was his separate property which he bought from R. C. Wilson and wife when he purchased the "other timber" from them, and defendant paid them therefor, and complainant never paid any part of the price thereof.    That defendant stated these facts to complainant who knew that it had no interest in the cypress timber on the lands of "R. L. Farrell and Com-

pany," and denies that complainant is entitled to any part of the money which defendant realized from the sale thereof; that in 1907 when defendant purchased the lands in T. 9 S. R. 29 E. from R. C. Wilson and wife "together with the turpentine privilege and leases" that Wilson claimed that the cypress timber belonged to the estate of his father, H. S. Wilson, and defendant then purchased it; that the cypress timber was not mentioned in the deed, and formed a separate transaction. The tenth paragraph of the answer is given herewith in full; it is as follows:

"This defendant further answering says that during January or February, 1908, Peninsular Naval Stores Company sent a man to inspect the lands and timber purchased by the defendant from Wilson and it was proposed to the defendant that the Peninsular Naval Stores Company would buy a half interest in the said lands, and that said company would put in the money to finance it and would also buy 11,000 acres of land adjoining the lands bought by the defendant from Wilson. The defendant refused to give a one-half interest but did agree to sell the Peninsular Naval Stores Company an undivided one-third interest upon the condition that they would put up the cash to buy the 11,000 acres of land when the business needed the timber. That the defendant sent the deed he received from R. C. Wilson and wife to complainant and that the deed which was drawn by complainant's officers was from the defendant and wife, to Forest Investment Company, the cypress timber was not excepted from that deed and was not included in the deed. This defendant further says that when he approached the complainant and requested it to buy the 11,000 acres adjoining the Wilson land purchased by defendant that Mr. Blount, one of complainant's officers said the price was too high and refused to buy it, but that said

land has since sold for a much greater price, and that said refusal greatly endamaged the defendant, and that said complainant then and there failed and refused to keep its partnership promise and to buy said land or to advance the money for the purchase of the same."

The answer then denies that the complainant is entitled to the relief prayed, or any part thereof, prays the same advantage of the answer as if he had pleaded or demurred to the bill, and prays to be dismissed with costs.

The record does not show that any replication was filed, but does contain a recital of an order by the court appointing a special master.

The Special Master attached to the report of his findings all the evidence adduced before him. The report sets out fully the Special Master's findings, and the reasons upon which he based them, and contains a statement that it had been agreed by the solicitors for the respective parties that if the Master should find that the complainant was entitled to an accounting he should state in the report the "amounts he found due, without further testimony."

The Special Master reported his findings to be: First, that the 120 acres of land located in Section 31 and particularly described in both the bill and answer, was paid for partly with funds of the complainant and defendant as R. L. Farrell and Co., whose account was carried with the Peninsular Naval Stores Company, naval stores factors, and was not paid by the defendant individually; second, that the S. ½ of Section 8 which the complainant and defendant agreed to sell to Yelvington because of the reasons advanced by the defendant, but which shortly after the execution of the deed were discovered to be unfounded, and was thereupon repurchased by Farrell

from Yelvington, should be held by the defendant for the benefit of himself and complainant. The Master does not find that there was any misrepresentation by the defendant to the complainant in this transaction, but found that in view of the mistaken circumstances under which the sale was made to Yelvington, and the relations existing between complainant and defendant, the latter should have recovered the land for their joint benefit. It was also pointed out by the Master whose report was very thorough and comprehensive and showed a most careful examination and analysis of the evidence, that the deed from the complainant and defendant to Yelvington did not describe the land at all, and that the legal title therefore did not pass. And although the pleadings did not mention the mistaken description, the Master found the equities to be with complainant, and that the deed to Yelvington should be treated as a nullity, the legal title remaining in the defendant and complainant as before the attempted conveyance. The Master did not allow defendant credit for any improvements upon the land which were made for the purpose of agriculture, upon the ground that the evidence showed that the land was unfit for agriculture because of the impossibility of draining it, which defendant knew; that drainage was a remote possibility, and that "complainant should not be charged, nor defendant credited, with the expense of improvements which must have been so obviously ill-advised;" third, the Master found against the defendant's contention that the complainant had no interest in the cypress timber upon the lands, but found that the complainant had a one-third interest therein, and was therefore entitled to one-third of the proceeds derived from the sale of the crossties made therefrom and sold by defendant; that the complainant should pay to the defendant one-third of the price

which defendant paid to Yelvington upon the repurchase of the S. ½ of Section 8, with interest; that the complainant was entitled to a portion of the lands described in the amended bill; that the value of the lands was twenty thousand dollars; that the value of the crossties and cedar cut from the lands by the defendant was $4,220.78, of which the complainant was entitled to one-third; that the complainant had paid taxes upon the lands and was entitled to a refund of two-thirds of the amount from defendant, the amount of which the Master found to be $240.46. The Master allowed an attorney's fee of $2,400.00, two-thirds of which should be paid by the defendant, and the costs amounting to $72.00 should be paid in like proportion by them.

The defendant by his solicitor filed exceptions to this report, and in such exceptions pointed out particularly the finding of the Master to which exception was taken. The exceptions questioned the correctness of the Master's findings: First, as to the interest of complainant in the one hundred and twenty acres of land in Section 31; second, as to complainant's interest in the S. ½ of Section 8, involved in the Yelvington transaction; third, as to the number and value of the crossties cut from the land and the complainant's interest therein; fourth, as to the finding that the defendant never repaid the four hundred dollars to the Peninsular Naval Stores Company, which amount was used to make the first payment on the one hundred and twenty acres purchased in Section 31; fifth, as to the finding in which defendant was not allowed credit for expenses for improvements on the south half of Section 8; sixth, as to the value of the lands; seventh, as to the finding that defendant had received $4,220.78 from timber cut from the land "in which the complainant is entitled to one-third;" eighth, as to the amount of

solicitors' fees; ninth, as to the finding that complainant was entitled to the relief prayed, subject to the modifications and conditions stated in the report, and tenth, as to each and every of the findings and report of the Master.

The final decree which was rendered in June, 1915, confirmed the Master's report and findings as to the facts and equities with some modifications. The decree adjudged that the defendant held an undivided third interest in the one hundred and twenty acre tract in Section 31 in trust for the complainant, and ordered a conveyance thereof to complainant upon the payment by it to the defendant of $266.67 with legal interest from May 25th, 1911, to the date of payment; that the defendant held an undivided one-third interest in the S. ½ of Section 8, T. 9 S. R. 29 E. in trust for complainant and conveyance thereof should be made by defendant to complainant upon payment by the latter to the former of the sum of $266.67 with legal interest from June 22, 1911; that the equities were with the complainant as to the matter of the accounting for the proceeds of the sale of the cypress and cedar sold by the defendant from the land, and approved the finding of the Master as to the amount received by the defendant therefrom, namely, $4,220.78, and ordered the defendant to pay to the complainant one-third of that amount, and in default of the payment for thirty days the complainant to have execution therefor, and a lien upon the lands of defendant set apart to him in the partition or in the event of a sale of the lands under the court's order upon the defendant's share of the proceeds of the sale; that the defendant owes to the complainant $240.46 on account of the taxes paid by complainant on the lands, which amount defendant was required to pay within thirty days, and in default thereof the complainant should have execution therefor and a lien upon the de-

fendant's lands set apart to him in the partition, or upon his part of the proceeds of the sale of the lands as before. The sum of two thousand dollars was allowed as solicitors' fees, two-thirds of which was decreed to be paid by the defendant, for which the solicitors were decreed to have a lien upon the lands involved in the suit in the event of the failure of the parties to pay the same within thirty days; that the Special Master be allowed $222.00 for his services to be paid in the same proportion, by complainant and defendant, and a lien as aforesaid upon the lands or proceeds of the sale thereof, and the costs to be paid in the proportion of one-third by complainant and two-thirds by the defendant; that upon the payments being made by complainant to defendant as decreed, and the deeds executed by defendant to complainant as decreed, the complainant will be entitled to and lawfully seized in fee simple of an undivided one-third interest, and the defendant of an undivided two-thirds interest in the one hundred and twenty acres of land in and to the S. W. ¼ and the N. W. ¼ of S. W. ¼ of Section 31, T. 8 S. R. 29 E. and the S. ½ of Section 8, T. 9 S. R. 29 E.; that the complainant is seized in fee simple of an undivided one-third interest, and the defendant of an undivided two-thirds interest, in the following described lands: all of Sections 5, 6, 7, N. ½ of Section 8, all of Section 16, and all of Section 17 except the N. E. ¼ of S. E. ¼ thereof, and all of Section 18 in Township 9 S. Range 29 E. Partition of the lands was ordered to be made as soon as the payments were made by the complainant and conveyances executed by the defendant as directed. Commissioners were appointed to make partition and report their actions and doings to the court. From this decree an appeal was taken by the defendant.

*W. W. Dewhurst* and *H. L. Anderson,* for Appellant;

*McWilliams & Bassett* and *David R. Dunham,* for Appellee.

ELLIS, J. (after stating the facts).—The appellant insists that the bill shows upon its face that the court was without jurisdiction and therefore upon the final hearing should have been dismissed, notwithstanding the answer. It is contended that the bill merely seeks an accounting between copartners, while praying for partition of lands, and that partition of partnership lands cannot be decreed until the equities between the partners have been settled; that the bill seeks to adjudicate the rights of the parties upon such a variety of subjects so different in character that they should not be litigated in one suit. It is pointed out that the bill seeks to establish a resulting trust in certain lands, an accounting between copartners, to surcharge a partnership account and a partition of lands held by copartners. It is true that the answer contains no demurrer to the bill upon any specific ground, but inasmuch as the answer sets up many matters of defense counsel seek the benefit therefrom either by way of answer, plea or demurrer. If the court was not wholly incompetent to grant the relief sought in the bill, the method pursued to question the form of the bill, or the court's jurisdiction, we think, would not avail. No question was raised until after the testimony was taken (if then) as to whether the court had jurisdiction to entertain a bill for partition, to establish a resulting trust, and for an accounting. There are subjects which a court of equity has no power to hear and determine, even by consent of parties, but if the subject-matter be of such character that jurisdiction may be conferred by con-

sent, the defendant will not be heard to complain if he makes no objection to a hearing, but participates in it. In this case a Master was appointed, much testimony was taken and a decree rendered upon the merits against the defendant who then makes objection here to the court's jurisdiction. See Central Elevator Co. v. People *ex rel.* Moloney, 174 Ill. 203, 51 N. E. Rep. 254, 43 L. R. A. 658; Brewster v. Colegrove, 46 Conn. 105; Page v. Young, 106 Mass. 313; Detroit Motor Co. v. Third Nat. Bank, 111 Mich. 407, 69 N. W. Rep. 726; Whiting v. Root, 52 Iowa, 292, 3 N. W. Rep. 134; Cutting v. Dana, 25 N. J. Eq. 265; Baron v. Korn, 127 N. Y. 224, 27 N. E. Rep. 804; Mayo v. Murchie, 3 Mumf. (Va.) 358; United Shoe Machinery Co. v. Holt, 185 Mass. 97, 69 N. E. Rep. 1056; Richmond v. Bennett, 205 Pa. St. 470, 55 Atl. Rep. 17. The rule has several times been recognized by this court. See Griffin v. Orman, 9 Fla. 22; Williams v. Wetmore, 51 Fla. 614, 41 South. Rep. 545; DeCottes v. Clarkson, 43 Fla. 1, 29 South. Rep. 442; Rivas v. Summers, 33 Fla. 539, 15 South. Rep. 319. See also 10 R. C. L. 368 and authorities cited.

This bill had for its principal object a partition of the lands owned in common by appellant and appellee, which, exclusive of the lands in T. 8 S. R. 29 E., amounted to 4447.41 acres, a one-third interest in which Farrell conveyed to the Forest Investment Company in 1908. The acreage in T. 8 S. R. 29 E. amounted to about eighteen hundred acres according to the deed from Farrell to the Forest Investment Company, which lands were also described in the bill. So far as the acreage was concerned a tenancy in common was alleged to exist between the complainant and defendant as to all of it. There were two tracts of land embraced in the lands

above referred to concerning which questions had arisen as to complainant's interest, which questions the court was asked to determine as incidental to the main relief sought by the bill.  Those questions arose out of the relations existing between complainant and defendant at the time when the incidents occurred giving rise to the differences between them.  The Forest Investment Company and the defendant were interested together as copartners in a turpentine business; their joint account was carried by the Peninsular Naval Stores Company under the name of R. L. Farrell and Company.  In this business the Forest Investment Company owned a one-third interest.  It owned as purchaser from Farrell an undivided one-third interest in the lands described.  As incident to the turpentine business of this partnership, by reason of considerations which arose affecting that interest and business, the two transactions, one involving the S. $\frac{1}{2}$ of Section 8, and the other the S. $\frac{1}{2}$ and N. W. $\frac{1}{4}$ of S. W. $\frac{1}{4}$ of Section 31, occurred.  According to complainant these transactions were of such character and so affected by the trust relation which existed between the two parties that in equity and good conscience the act of the defendant was the act of the partners, and the transactions were for their joint interest.  This question was incidental to the main relief sought and cannot in the view we have of the evidence be considered as the principal object of the suit; it certainly was not according to the bill.  The partnership had terminated, the parties were merely tenants in common of the lands, one of them sought a partition which he had a right to ask for, it was discovered that his cotenant had not as partner in the turpentine business, but as one of the owners of the land, denuded it of a large quantity of cypress and cedar which he sold and converted the proceeds thereof to his

own use to the exclusion of his cotenant. The accounting prayed for in this transaction of the defendant, was the other matter concerning which complainant asked relief. It was incident to the main purpose of the bill, and grew out of the relations of the parties as cotenants of the lands sought to be partitioned.

The objection that the bill was multifarious, we think, is not well founded. A bill is not necessarily multifarious because there may be united in it several causes of action. If all the different causes of action united in the bill grew out of the same transaction, and all the defendants interested in the same rights, etc., the bill will be maintained. Where the subject-matter of the controversy is encumbered with many conflicting claims equity will entertain a suit for determining and adjusting all these interests at once. The objection of multifariousness when made for the first time at the hearing will not be allowed where the real point in controversy can be determined as well in the one court as if there were many separate suits. The objection in this cause does not appear to be so grave as to interpose an obstacle to the proper administration of justice, and therefore should not be allowed. See 10 R. C. L. 429-435; Nelson v. Hill, 5 How. (U. S.) 127; Briges v. Sperry, 95 U. S. 401; Hefner v. Northwestern Mut. Life Ins. Co. 123 U. S. 747, 8 Sup. Ct. Rep. 337; Hamilton v. Whitridge, 11 Md. 128; Henderson v. Farley Nat. Bank, 123 Ala. 547, 26 South. Rep. 226; Fils v. Rosser, 162 Ala. 504, 50 South. Rep. 287; Emerson v. Gaither, 103 Md. 564, 64 Atl. Rep. 26; Johnson v. Black, 103 Va. 477, 49 S. E. Rep. 633. In dealing with the question of multifariousness the matter particularly to be considered is convenience in the administration of justice, and if this is accomplished by the mode of procedure adopted, the objection will not lie. This is

the principle upon which the courts act in determining the validity of an objection of that character. It is no objection that there are several causes of action; they arose from the holding of this large tract of land in common between the complainant and defendant, convenience was subserved and expenses and costs reduced by the procedure adopted. No one can be said to have been inconvenienced, and the court had power to settle all the questions presented. Having taken jurisdiction of the cause for one purpose, the court had power to proceed with the determination of all the matters presented. See Taylor v. Florida East Coast R. Co., 54 Fla. 635, 45 South. Rep. 574; Miller v. Louisville & N. R. Co., 83 Ala. 274, 4 South. Rep. 842; Allen v. Elder, 76 Ga. 674; Thomas v. Thomas, 250 Ill. 354, 95 N. E. Rep. 345; Doggett v. Hart, 5 Fla. 215; Griffin v. Fries, 23 Fla. 173, 2 South. Rep. 266; Capital City Bank v. Hilson, 64 Fla. 206, 60 South. Rep. 189; Carlton v. Hilliard, 64 Fla. 228, 60 South. Rep. 220. Under the statutes of this State courts of equity have jurisdiction to order the partition of lands. Sec. 1939 General Statutes of 1906, Florida Compiled Laws of 1914; Christopher v. Mungen, 61 Fla. 513, 55 South. Rep. 273.

The question of the right of a corporation to enter into a copartnership with an individual is not involved in this proceeding. Whether there was any power in the corporation to do so or not, the copartnership was formed, transacted business, and dissolved. This complainant does not seek by the bill to open any partnership accounts, nor does it seek an accounting as of one partner from another; but after terminating a partnership arrangement in a certain business it found itself tenant in common of certain lands with appellant, and filed a bill for partition seeking an account from its cotenant of

14

the profits derived by him from the sale of certain timber from the common property. The first assignment of error is not sustained.

The assignments of error numbered from two to eight inclusive attack the decree as being erroneous for not sustaining certain exceptions to the Master's report; for confirming the report as to its findings of fact and equities; for finding the equities to be with complainant, and for decreeing that complainant was entitled to an undivided third interest in the one hundred and twenty acres of land in Section Thirty-one, and the South half of Section eight, and for adjudging that the complainant was entitled to an accounting from the defendant as to the proceeds of the sale of the timber from the lands, and as to the amount of such proceeds, and in ordering the defendant to pay to complainant a certain sum on account of taxes paid by the complainant on the land. These assignments of error, as well as the remaining ones, twelve in number, involve an examination of the evidence. The exceptions to the Master's report are based upon the proposition that the evidence did not justify the different findings. Counsel in their brief and during the oral argument urged that the report of the Master and the decree following it were unsupported by the evidence. We think it would be of no interest to the parties to discuss the evidence, which was quite voluminous and conflicting. The Master carefully examined it and made an exhaustive and clear analysis of it. His report, we think, was fully sustained by the evidence and the decree which followed the Master's findings contains no error that we have discovered. There was ample evidence to support the finding that the defendant and complainant as Farrell and Company made the first payment on the purchase price of the one hundred and twenty acres in

Section 31, and that the land was purchased at the time for the benefit and use of the partnership; and to support the theory of the bill that the defendant was in conscience bound to have repurchased the South half of Section 8 for the benefit of himself and complainant. While the copartnership between complainant and defendant had terminated when the sale was made to Yelvington, yet it was made on defendant's representations some time before the dissolution of copartnership, which representations were afterwards discovered to be untrue. Not that there was any design on defendant's part to misrepresent to his cotenant any facts, but the fact remains that the statements he did make constituting the reasons for selling were discovered to be unfounded, whereupon he repurchased the lands in his own name. He should not be permitted to profit in that manner at the expense of his cotenant.

The Chancellor's conclusions on the facts will not be reversed unless it clearly appears that he erred in such conclusions. City of Jacksonville v. Huff, 39 Fla. 8, 21 South. Rep. 774; Waterman v. Higgins, 28 Fla. 660, 10 South. Rep. 97; Lucas v. Wade, 43 Fla. 419, 31 South. Rep. 231; Fuller v. Fuller, 23 Fla. 236, 2 South. Rep. 426; Sarasota Ice, Fish & Power Co. v. Lyle & Co., 58 Fla. 517, 50 South. Rep. 993. But appellant contends that although the bill waived an answer under oath, the defendant made oath to his answer and was therefore entitled to the benefit of an answer under oath. Where an answer is made under oath the allegations contained in it which are responsive to the bill and which set up facts to which other testimony could be received are to be taken as true unless disproved by evidence of greater weight than the testimony of one witness. See Carr v. Thomas, 18 Fla. 736; Carter v. Bennett, 6 Fla. 214;

Day v. Jones, 40 Fla. 443, 25 South. Rep. 275; Pinney v. Pinney, 46 Fla. 559, 35 South. Rep. 95. The above rule rests upon the equitable principle that if defendant is put upon his oath by his adversary, credit shall be given to his own declarations unless they are contradicted by at least two witnesses, or by written documents, or by evidence greater than the testimony of one witness. See White v. Walker, 5 Fla. 478. To have this weight, however, the answer must be direct and positive, must be under oath, and relate to such facts as other testimony could be received to establish. It should not as an example be permitted to show that the intent and meaning of the parties to a written agreement was contrary to what appears on the face of it, as said by the court in Carter v. Bennett, *supra*. The modern rule according to the American decisions is that the sworn answer is evidence in the defendant's favor in so far as its statements are responsive to the allegations of the bill. In other words, when the material allegations of a bill are met by a responsive answer under oath, the allegations of the bill must be supported by the testimony of two witnesses, or one witness and corroborating circumstances, otherwise the defendant's answer will prevail and the bill be dismissed. The practice of answering under oath is of ancient origin, and in this country is universally required except where the practice has been changed by statute or rule. Union Bank of Georgetown v. Geary, 5 Pet. (U. S.) 99; Conley v. Nailor, 118 U. S. 127, 6 Sup. Ct. Rep. 170; Dravo v. Fabel, 132 U. S. 487, 10 Sup. Ct. Rep. 170. In order for the plaintiff to avoid the effect of an answer, that is, if he was unwilling that it should have the effect of evidence against him, he was required to expressly waive in the bill the oath of the defendant to the answer. Conley v. Nailor, *supra*. This

was the effect of Rule 41 of the Rules of Practice in the Courts of Equity of the United States as prescribed by the Supreme Court of the United States and amended in 1871.

Section 1877 of the General Statutes of Florida, 1906, Florida Compiled Laws, 1914, provides as follows: "In the absence of provisions of the law or rules of practice of this State, the rules of practice in the courts of equity of the United States, as prescribed by the Supreme Court thereof, under the act of Congress of the 8th of May, one thousand seven hundred and ninety-two, shall be rules for the practice of the courts of this State when exercising equity jurisdiction; and when the rules of practice so directed by the Supreme Court do not apply, the practice of the courts shall be regulated by the practice of the high court of chancery of England."

In the case of Kahn v. Weinlander, 39 Fla. 210, 22 South. Rep. 653, this court speaking of the above Act which was passed in 1828 and has been continued as law in this State down to the adoption of the General Statutes of 1906, said: "The purpose of the Act referred to was to make the rules of practice adopted by the Supreme Court of the United States in the equity courts of the United States applicable in chancery causes in the courts of this State, where provision was not made on the subject by the Act, and it makes no difference whether the rules provided for were adopted before or after the passage of the Act, provided there is no statutory provision covering the subject.  We are of the opinion that such was the purpose of the Act, and it should be so construed."  Under the provisions of the Act of 1873, Chapter 1938, the Supreme Court of Florida adopted rules governing the practice and proceedings in the Circuit Courts of Florida in Equity.  The Supreme Court of the

United States had prior to that time, however, amended Rule 41, providing that the complainant may in his bill waive an answer under oath in which case the answer should not be evidence in his favor unless the cause was set down for hearing on bill and answer only.   The result of all this, as said by this court in the case above cited, is that the amendment to Rule 41 as adopted by the Supreme Court of the United States is in force in the courts of chancery of this State, because no rule of this court adopted under the Act of 1873 was in irreconcilable conflict with it.   Now counsel for appellant contends, and we think correctly, that as the new rules of practice for the courts of equity of the United States promulgated by the Supreme Court of the United States in November, 1912, make no provision for the complainant waiving in his bill an answer under oath; and as the new rules abrogated the old ones, and as there is no provision in the rules prescribed by the Supreme Court of Florida on the subject, a complainant cannot deprive the defendant of the benefit of his answer under oath by expressly waiving it in the bill.

In the case of Clements v. Moore, 6 Wall. (U. S.) 299, the court through Mr. Justice SWAYNE, said that it was the defendant's right to answer under oath, and the complainant could not deprive her of it.   That such was the settled equity practice where there was no regulation to the contrary.   This announcement of Judge SWAYNE based upon an opinion by Judge KINNEY in Armstrong v. Scott, 3 Greene (Iowa) 433, seems to be in accordance with the weight of authority on that point in the United States.   See 10 R. C. L. 545-549.   Why an answer not under oath should have any greater force than any other pleading in a cause is not apparent.   If the oath was waived under the old rule, the complainant

was still required to prove the allegations of his bill. As the purpose of requiring an answer under oath was for the complainant's advantage in that it required the defendant to purge his conscience .upon the matters alleged, and as the price of that advantage was the benefit to the defendant of his responsive averments as evidence in his behalf, the reason of the old rule adopted in this and other jurisdictions which permitted the waiving in the bill of the oath to the answer is obvious and was exceedingly salutary. But although the appellant's contention is correct upon this point, viz.: that the complainant cannot since the adoption of the new rules by the Supreme Court of the United States, deprive the defendant of the "right" of swearing to his answer and thereby have more than the benefit of one witness in his behalf, the sworn answer does not have that effect as to new matter set up by way of affirmative defense; nor as to averments of facts which testimony would not be admissible to prove. The answer in this case contains many such averments, and certainly cannot as to such averments be given the same effect as a sworn answer which is responsive to the allegations of the bill. We think the evidence offered by the defendant to contradict the terms of the deed from Wilson to Farrell, and from Farrell to complainant, was properly rejected; that the Master's conclusion which was confirmed by the court as to the value of the timber cut from the lands cannot be disturbed in view of the answer of the defendant, and the evidence in the case, and that the matter of requiring the defendant to refund to the complainant his proportion of the taxes paid by the complainant on the lands was proper under the prayer for general relief.

It was contended in the oral argument that the burden was upon the complainant to prove that it was authorized

to do business as a corporation in this State, and in the absence of any evidence on the subject it must be held to be without such authority. The bill expressly alleges that the complainant is so authorized, the answer does not deny the allegation. The statutes of this State, Sections 2682 *et seq.* General Statutes of 1906, do not expressly prohibit a foreign corporation from bringing a suit in this State until it has complied with the requirements of the statute. The reason for the omission may have been to enable such corporation to have the aid of the courts in the protection of its property rights where the court does not have to give force or validity to an executory contract by such a corporation. The rule seems to be that when the defendant wishes to raise the question of the corporation's right to maintain a suit in this State he should make the defense specially. See 12 R. C. L. 98-101. The point raised by appellant that a corporation cannot enter into a copartnership with an individual and therefore is not entitled to an accounting from its so-called partner, we think, is not involved in this case. The partnership between the Forest Investment Company and the appellant which existed from 1908 to some time in 1911 had been dissolved, its affairs settled and all obligations discharged so far as the pleadings and evidence show. The contracts which the partnership made have been executed. The partners were left as tenants in common of certain lands. The relations which they bore to each other as tenants in common required the exercise of good faith toward each other in all transactions pertaining to the common property, and because of these relations and the reciprocal duties and obligations the court undertook to settle the the disputed question as to complainant's interest in the S. ½ of Section 8 and the one hundred and twenty acres in Section 31, and

require an accounting for the value of the timber cut from the common property and in the exercise of the jurisdiction we think the court acted clearly within its power and that the evidence does not show that the conclusions reached were erroneous. So the decree is affirmed.

BROWNE, C. J., and TAYLOR, SHACKLEFORD and WHITFIELD, JJ., concur.