**NORMAN M. MORRIS CORPORATION,**
Plaintiff-Appellee,

v.

**Hyman WEINSTEIN, d/b/a Bright Star
Enterprise, Defendant-Appellant.**

No. 71-2922.

United States Court of Appeals,
Fifth Circuit.

Aug. 14, 1972.

Aaron A. Foosaner, North Miami Beach, Fla., A. Albert Sugar, David L. Nelson, Detroit, Mich., for defendant-appellant.

Kenneth L. Ryskamp, Miami, Fla., for plaintiff-appellee.

Before PHILLIPS,* THORNBERRY and RONEY, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge:

Norman M. Morris Corporation,[1] brought this action against Hyman Weinstein, doing business as Bright Star Enterprises,[2] seeking a temporary and permanent injunction against Weinstein from doing certain acts which Morris Corporation alleged constituted unfair competition as against it.

After the complaint and answer had been filed and certain preliminary motions disposed of, Morris Corporation filed a motion for summary judgment. After discovery proceedings had been completed, depositions of Milton H. Davis and Weinstein had been taken and filed, an affidavit of Maurice Burns had been filed, a pretrial conference had been held, and a pretrial stipulation had been entered into and filed, the court considered a written memorandum filed by Morris Corporation and a written memorandum filed by counsel for Weinstein and granted a permanent injunction.

The trial court's findings and conclusions of law are set out in note 3 hereto.[3]

---

* Hon. Orie L. Phillips, Of the Tenth Circuit, sitting by designation.

1. Hereinafter called Morris Corporation.

2. Hereinafter called Weinstein.

3. "FINDINGS OF FACT
"1. This is an action by the plaintiff, Norman M. Morris Corporation, against the defendant, Hyman Weinstein, d/b/a Bright Star Enterprise, for injunctive relief against the defendant under Section 1338 of Title 28, United States Code.
"2. That the plaintiff, Norman M. Morris Corporation, is the exclusive sale agent to sell Omega watches in all of the 50 states of the United States and the island of Puerto Rico (hereinafter called Morris' territory).
"3. The defendant, Hyman Weinstein, d/b/a Bright Star Enterprise, has in the past sold watches in Morris' territory, which watches bear the tradename 'Omega', but which have the last four digits of the serial number of the movements drilled out, and such watches are not sold with a genuine Omega guarantee.
"4. That the actions of the defendant in selling the watches, as set forth in paragraph 3, have been detrimental to the good will and reputation of the Norman M. Morris Corporation, as the exclusive sale agent for Omega watches,

There is no substantial dispute as to the facts, which are these:

Morris Corporation is incorporated under the laws of New York. Its principal office is located in the Omega Building in New York City.

The Omega Watch Company of Switzerland for more than 40 years has been manufacturing watches bearing its trademark, "Omega." Its trademark, "Omega," is registered in the United States.

For many years the general public has believed that a watch bearing such trademark is a watch manufactured, sold, and guaranteed by the Omega Watch Company, and sold by authorized retail dealers who fully service such watches. For more than 40 years, under a written agreement entered into by the Omega Watch Company and Morris Corporation, the latter had the exclusive right in what are now the 50 states of the United States and Puerto Rico to sell Omega watches, purchased from the Omega Watch Company. The agreement specifically authorized the Morris Corporation to affix the Omega trademark on faces and cases manufactured by or for it, provided that such faces and cases were of the usual Omega quality and were to be used with Omega movements.

Morris Corporation has no warehouse facilities, no wholesalers, and no jobbers in Florida or elsewhere in the exclusive territory granted to it. It contracts with a Florida repair service to repair Omega watches sold by it in Florida. It owns no interest in such repair service. It sells only to authorized retail dealers.

Its sole employee in Florida is Milton H. Davis. He is a salesman and takes orders from retail purchasers in Florida and Puerto Rico who handle Omega watches purchased from Morris Corporation. He sends such orders by mail to Morris Corporation in New York City and it sends to retail dealers the watch or watches ordered by them by interstate transportation.

In his deposition taken by the Morris Corporation, Weinstein testified to the following facts:

Weinstein carried on his business under the name "Bright Star Enterprise" for about two and one-half years prior to the day he gave his deposition, which was December 9, 1970. His place of business was Oak Park, Michigan.

During the two-and-one-half-year period, Weinstein made trips to Europe from time to time and purchased watches bearing the name "Omega," the trademark of the Omega Watch Company, from six different retail dealers in Austria, Germany, and Italy. He refused to identify any of the retail dealers from whom he purchased such watches, giving as a reason that if he did so, he would no longer be able to purchase such watches from them. He personally brought the watches so purchased back to the United States, passed them through the United States customs, and paid the import duties thereon. He resold such watches to retail dealers in all of the states of the United States. He used the mails to solicit orders for such watches from retail dealers in other states than Michigan, received orders from such retail dealers in other states than Michigan, and filled such orders by sending the watches from Michigan through the United States mails to retail dealers in other states who had ordered them. He also made some sales in Florida and possibly in other states by personal solicitation.

During the two-and-one-half-year period, he sold about 3,000 of such watches

and in doing so the defendant has unfairly competed with the plaintiff.

"CONCLUSIONS OF LAW

"1. This court has jurisdiction over this action under 28 U.S.C. § 1331.

"2. That the actions of the defendant in selling the watches in Morris' territory constitute unfair competition.

"3. That plaintiff is entitled to a permanent injunction restraining the defendant from selling watches bearing the trademark 'Omega' which have drilled out serial numbers and which do not have and carry with them the genuine guarantee of the Omega Watch Company."

to retail dealers in the United States. He admitted that such watches bore no identifying serial numbers.

The evidence fully established that the watches which Weinstein sold to retail dealers in Florida and other states had imprinted thereon the word "Omega," the trademark of the Omega Watch Company, and that the boxes or containers in which such watches were sold had printed thereon what purported to be the guarantee of the Omega Watch Company, but which in fact was not the genuine guarantee of such company.

The watches were sold by Weinstein in Florida and other states as new Omega watches, when in fact the digits in the serial numbers on the movements of such watches, with which they could be identified as watches made by the Omega Watch Company and tied to a guarantee by the Omega Company, had been drilled out.

Weinstein testified that after the Morris Corporation refused to honor the guarantees on the boxes or containers of the watches so sold by him, he prepared a guarantee which read:

### "GUARANTEE

"This Omega watch has been electronically tested and checked when it entered our stock. _____ guarantees the movement against defective parts and workmanship for one year from date of purchase, and will repair or replace any movement which fails to perform properly because of such defects during the life of the guarantee. With proper care, your watch will give you long, dependable service. Date _____ Model _____ Authorized _____"

It will be noted that such guarantee prepared by Weinstein purported to be a guarantee of an Omega watch. It recites, "This Omega watch * * *."

The customer who purchased such a watch from a retail dealer to whom Weinstein had sold it would believe it to be an Omega Watch Company guarantee.

Weinstein testified that the retailer or his clerk, whoever sold a Weinstein watch to a customer, was to sign his name in the blank in the guarantee form following the word "Authorized." The evidence does not disclose what was to be filled in the blank following the word "stock." If it were to be "Weinstein" or "Bright Star Enterprise" it is reasonable to assume it would have been so printed on the form.

It is well settled that one of the purposes which the law intends to subserve when it gives a right to an injured person to protection from unfair competition and provides a remedy to bring about such protection, is to afford protection also to the general public.[4]

Weinstein also admitted that the watches which he sold bore no identifying serial numbers.

In his deposition, Milton H. Davis testified that he was a state representative of the Morris Corporation; that what purported to be Omega watches had been purchased from Weinstein by L. Reed and Company in South Miami and Royal Distributors in Daytona Beach, Florida; that such watches had their identifying serial numbers drilled out; that two authorized Omega jewelers told him that they would cease purchasing Omega watches from Morris Corporation until the situation created by the defendant was straightened out; and that both of such dealers told Davis that there was a noticeable difference in their sales, which they attributed to the sales made by Weinstein.

In his affidavit, Maurice Burns averred that he was engaged in the jewelry business in Miami, Florida; that during the early part of 1970, Weinstein personally visited with him in Miami, Florida, and at that time sold to him a "certain quantity" of "Omega" watches;

4. Norwich Pharmacal Company v. Sterling Drug, Inc., 2 Cir., 271 F.2d 569, 570, 571; Stahly, Inc. v. M. H. Jacobs Co., 7 Cir., 183 F.2d 914, 917.

that Weinstein held himself out to be doing business under the name of Bright Star Enterprise, 24631 Church Street, Oak Park, Michigan; that at the time said watches were sold by Weinstein to Burns, it was not disclosed that said "Omega" watches were watches from which the identifying serial numbers on the movements of the watches had been in any way erased, altered, or removed; that subsequently Burns had occasion to carefully inspect the watches purchased from Weinstein, and found that the serial numbers on the movements had been drilled out to the extent that the last six digits were erased.

The deposition of Norman M. Morris, President of Morris Corporation, was taken on June 22, 1971. It was filed in the instant case in the District Court on July 22, 1971. On July 23, 1971, Weinstein filed a petition for reconsideration, in which he urged the court to give consideration to such deposition. The court entertained such petition and filed a memorandum in which it stated it had considered such petition and found it to be without merit. In its memorandum, the court said:

"It became apparent at the pre-trial conference that the only disputed issue of material fact was whether plaintiff in fact had a contract giving it the exclusive right to sell watches bearing the Omega trademark in the United States. Defendant's contention was that plaintiff had never produced the contract. Subsequent to the pre-trial conference, and upon direction of the court, plaintiff 'served upon the court' a copy of the contract which defendant did not dispute. The court then entered its order granting judgment * * *.

"The court has complied with defendant's request that it examine the deposition of Mr. Norman M. Morris, * * * and having read the deposition, the court finds that it creates no issue of material fact * * *."

After fully considering the other contentions made by Weinstein, the court found each of them to be without merit and reaffirmed its decree of July 8, 1971.

Weinstein contends that the trial court did not have jurisdiction of the subject matter of the action.

The Act of July 5, 1946, 60 Stat. 441, 15 U.S.C.A. § 1125(a), in part here material reads:

"§ 1125. *False designations of origin and false descriptions forbidden*

"(a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, * * * any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such * * * description or representation cause or procure the same to be transported or used in commerce or delivery the same to any carrier to be transported * * * shall be liable to a civil action * * * by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

Section 1125(a), supra, created a new federal statutory *sui generis* tort.[5]

█ The intent of Congress in enacting § 1125(a), supra, dealing with false descriptions or representations of articles in commerce was clearly to fashion a new federal remedy against a particular kind of unfair competition that the common law had effectively protected, and under § 1125(a), supra, federal jurisdiction attached against any defendant who had allegedly, by word or deed, falsely represented his commodity (watches in the instant case) and had caused it to enter commerce and be transported in interstate commerce, even in the absence of diversity of citizenship

---

5. Mutation Mink Breeders Ass'n v. Lou Nierenberg Corp., D.C.S.D.N.Y., 23 F.R.D. 155.

or a related federal claim of infringement.[6]

It is perfectly clear, under evidence that was before the trial court which was free from dispute, that Weinstein gave false descriptions and made false representations with respect to the watches he sold by retail to retailers in Florida and other states of the United States, and that with knowledge of such falsity he caused such watches to enter into interstate commerce and to be transported in interstate commerce.

██ The Morris Corporation had the exclusive right to purchase directly from the Omega Watch Company, Omega watches to be sold by the purchaser in the states of the United States and in Puerto Rico. Morris Corporation was a person damaged by the unlawful competition of Weinstein, and therefore was entitled to maintain a civil action for injunctive relief under § 1125(a), supra.

We conclude the court had jurisdiction of the action under the provisions of § 1125(a), supra, and 28 U.S.C.A. § 1331.

Weinstein contends, however, that the trial court lacked jurisdiction because the Morris Corporation had not complied with § 613.01 and § 613.04, F.S.A., which in part here material read:

"§ 613.01. No foreign corporation shall transact business, or acquire, hold or dispose of property in this state until it shall have filed in the office of the secretary of state a duly authenticated copy of its charter or articles of incorporation, and shall have received from him a permit to transact business in this state. * * *

\* \* \* \* \* \*

"§ 613.04. The failure of any such foreign corporation to comply with the provisions of this chapter shall not affect the validity of any contract with such foreign corporation, but no action shall be maintained or recovery had in any of the courts of this state by any such corporation, or its successors or assigns, so long as such foreign corporation fails to comply with the provisions of this chapter."

██ First, such provision does not limit the jurisdiction of the federal district courts in Florida. Only Congress has the prerogative of defining the jurisdiction of the lower federal courts. The Florida courts hold the failure to comply with the Florida statute is an affirmative defense to an action by a foreign corporation and must be specifically pleaded.[7] We think, under Rule 8(c) of the Federal Rules of Civil Procedure, it is a defense which must be affirmatively pleaded. It was not so pleaded by Weinstein in the instant case and was not properly raised or passed on in the trial court.

The Florida statute does not prohibit a foreign corporation from instituting a suit, but if such a defense is raised and established, the action will be stayed, unless and until such corporation complies with the Florida statute. See Burton v. Oliver Farm Equipment Sales Co., 121 Fla. 148, 163 So. 468.

██ Moreover, Morris Corporation was engaged only in interstate business in Florida, and Florida cannot require a foreign corporation to get a certificate of authority to do business when it is engaged only in interstate business in Florida, and the fact that it sends salesmen into Florida, if they are sent there only to promote such interstate business, does not subject such foreign corporation to regulations imposed by Florida.[8]

Weinstein contends that the Florida statute applies where the action brought

6. L'Aiglon Apparel Inc. v. Lana Lobell, Inc., 3 Cir., 214 F.2d 649, 651; American Rolex Watch Corp. v. Jack Laufer & Jan Voort, Inc., D.C.E.D.N.Y., 176 F.Supp. 858, 860, 861; Gold Seal Company v. Weeks, D.C.D.C., 129 F.Supp. 928, 939, 940.

7. Farrell v. Forest Inv. Co., 73 Fla. 191, 74 So. 216, 224.

8. Eli Lilly & Co. v. Sav-On-Drugs, Inc., 366 U.S. 276, 278, 279, 81 S.Ct. 1316, 6 L.Ed.2d 288, and note 8 thereto.

is a diversity action. We need not decide that question. We hold that the trial court had jurisdiction under the provisions of 15 U.S.C.A. § 1125(a), and 28 U.S.C.A. §§ 1337 and 1331(a).

The contract between the Omega Watch Company and Morris Corporation is not unlawful. No question of monopoly or prevention of competition by the Morris Corporation or the Omega Watch Company is involved.

■ The law fosters and protects lawful competition, but prohibits unlawful competition.[9] A manufacturer has the right to select the agent who shall exclusively represent him in the sale of his product, and to designate the territory within which he shall so act.

By so doing, it does not in any way prohibit Weinstein from importing into the United States Omega watches lawfully acquired by him in Europe and lawfully selling them in the United States and Puerto Rico.

The injunction provision of the decree reads:

"Hyman Weinstein, d/b/a Bright Star Enterprise, his agents, servants, employees, attorneys, and all persons acting in conjunction with the defendant or at his direction, be and they are hereby permanently restrained and enjoined from selling or distributing any watches bearing the name 'Omega' which have drilled out serial numbers and which do not have with them the genuine guarantee of the Omega Watch Company in any of the fifty states of the United States and the island of Puerto Rico."

Weinstein contends that such language prohibits him from selling Omega watches anywhere in the United States and Puerto Rico. That is a tacit admission by Weinstein that he cannot acquire Omega watches unless the identifying digits in the serial numbers of the watches have been drilled out.

■ We believe, however, that the language of the injunction provision of the decree is too general. We are of the opinion that it should have enjoined Weinstein from selling watches in the United States and Puerto Rico, which he purchased from retail dealers in Europe or elsewhere and which have the identifying digits in the serial numbers drilled out, unless he tells the buyers of the watches that he purchased them from retail dealers and that the digits in the serial numbers on the movements of such watches, by which they could be identified as watches made by the Omega Watch Company and tied to a guarantee of the Omega Company, have been drilled out and such watches are not guaranteed by the Omega Watch Company; unless he eliminates from the boxes or containers in which the watches are sold or elsewhere any language purporting to be a guarantee of the watches by the Omega Watch Company; unless by the language of any guarantee furnished by him to a retail dealer who purchases a watch purporting to be an Omega watch from him, which guarantee is to be given by such retail dealer to the person to whom he sells such watch, he makes it perfectly clear that it is solely the guarantee of Weinstein, not of the Omega Watch Company; and that it should have enjoined Weinstein from making any false description or representation with respect to any watch purporting to be an Omega watch, which he sells or causes to be transported in interstate commerce in the United States or Puerto Rico.

The decree will be modified so as to conform substantially to the restraints we have indicated above, and as so modified, it will be affirmed.

The costs on this appeal shall be assessed against Weinstein.

---

9. Socony-Vacuum Oil Co. v. Rosen, 6 Cir., 168 F.2d 632, 636.