MIDDLETOWN MANUFACTURING CO.,
INC., Plaintiff,

v.

SUPER SAGLESS CORPORATION,
Defendant.

No. EC 74–87–S.

United States District Court,
N. D. Mississippi, E. D.

Sept. 11, 1974.

Claude A. Chamberlin, Houston, Chamberlin & Houston, Aberdeen, Miss., William G. Konold, Wood, Herron & Evans, Cincinnati, Ohio, for plaintiff.

David Wolf, Wolf, Greenfield & Sacks, Boston, Mass., F. M. Bush, III, Mitchell, McNutt, Bush, Lagrone & Sams, Tupelo, Miss., Baxter N. Knox, Jr., New Albany, Miss., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ORMA R. SMITH, District Judge.

This action has been submitted to the court on plaintiff's motion for a preliminary injunction on the verified complaint, live evidence introduced at the hearing, affidavits submitted by the parties, memoranda of counsel, and oral argument.

The court being now fully advised in the premises adopts the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Plaintiff, Middletown Manufacturing Company, Inc. (Middletown), is engaged as a manufacturer of slider recliner hardware. This type hardware is used by manufacturers of recliner chairs. Middletown's plant is located at Simpsonville, Kentucky, where plaintiff, a Kentucky corporation, has its principal place of business.

2. Defendant, Super Sagless Corporation (Super Sagless), is a New York corporation, with its principal place of business and manufacturing plant located at Tupelo, Mississippi. Super Sagless, a manufacturer of recliner hardware is a competitor of Middletown.

3. Each party produces its product for sale and distribution to manufacturers of recliner chairs. The available market is composed of approximately one hundred manufacturers within the United States and elsewhere. Specifically involved in the action sub judice are six of the largest manufacturers within this group.

4. The affidavit of McKinley Goff, plaintiff's Field Sales Engineer, accurately describes the recliner hardware manufactured by plaintiff and the slider recliner developed by plaintiff's engineers as follows:

Recliner hardware consists of a linkage system which interconnects a base, a body support formed by a seat and back and a footrest to permit the body support to tilt with respect to the base and effect an outward extension of the footrest. This hardware is sold to the furniture manufacturer who mounts it on the frames or the base, body support and footrest, and thereafter upholsters the furniture for sale to the customer. In 1971 Middletown developed and engineered a sliding recliner which added to the conventional recliner two additional systems, namely, a track and roller slide attachment between armrests and, hence, the body support and base and a control between the body support and base. The addition of the slide and control, to create the sliding recliner, permits the chair to swing from an upright position to a conventional reclining position while the body support slides forward. Thus, the rear extremity of the body support remains in a substantially vertical plane during the reclining of the chair and does not swing rearwardly.

5. The development and engineering of the slider recliner hardware by Middletown involved considerable time and expense. When introduced to the trade the hardware was well received and Middletown has enjoyed a successful marketing of the product.

6. Considerable time, money and effort have been required of Middletown for the successful introduction of the new hardware to the trade.

7. Middletown has an application for a patent pending. This fact is made known to all coming into contact with Middletown's slider recliner hardware, the words "Patent Pending" being imprinted upon the hardware.

8. The Middletown slider recliner hardware was introduced to the trade in October 1972 at a show in High Point,

North Carolina under the trademark "Wall Hugger". The hardware was a great commercial success.

9. As early as 1965 Super Sagless conceived the idea of making a "Wall Rester" hardware which would contain attributes similar to those incorporated in Middletown's "Wall Hugger". A prototype of such hardware was made and tested. Super Sagless gave its "Wall Rester" a low priority status, because its officers did not believe that it was likely to be commercially successful. It was, however, discussed openly in the industry.

10. After Middletown's "Wall Hugger" appeared on the market, Super Sagless obtained twenty units of Middletown's slider recliner hardware and, after making slight adjustments in the bar and bracket, offered the hardware to six of its customers, who were also customers of Middletown.[1] At a show conducted at the Chicago Furniture Mart on or about June 20, 1974, Middletown's Field Sales Engineer, Goff, observed a sample chair put on display by one of the six furniture manufacturers above mentioned. The hardware on the chair was represented by the manufacturer to be that of Super Sagless. Upon examination it was found that all of the hardware, except the bar and bracket, was of Middletown manufacture.

11. The evidence reflects that Super Sagless obtained the above mentioned Middletown's slider recliner hardware units from customers who purchased recliner hardware from both Middletown and Super Sagless, made slight variations in the bar and bracket, put together a prototype of the hardware, and furnished the prototype to its said customers as representing Super Sagless' "Wall Rester" unit, which Super Sagless would manufacture and sell to the customers. Super Sagless did not inform these customers that the hardware represented by the prototype, except for the variations created by slight changes in the bar and bracket, was of Middletown manufacture. The only reasonable inference that the court can draw from such activity is that Super Sagless represented the prototype to represent hardware which would be manufactured by Super Sagless. Such, in the opinion of the court, was a false representation of the origin of the hardware.

12. Super Sagless has designed a slider recliner which duplicates, for all practical purposes, the slider recliner of Middletown. Super Sagless is selling the hardware manufactured by it without making it known to the trade that such hardware was copied from and is a reproduction of the Middletown hardware.

13. Middletown brings this action to enjoin and restrain Super Sagless, temporarily and thereafter permanently, from using Middletown's hardware or any part of it in connection with advertising, offering for sale or the sale of its (Super Sagless) hardware, and for an accounting and other appropriate relief.

14. At the initial hearing on the motion for a preliminary injunction a consent order was entered requiring Super Sagless "to take all reasonable steps to withdraw from its customers all of the sliding recliner hardware of Middletown

---

1. Izchak Cycowicz, Engineer for Super Sagless, stated in his affidavit filed in this action:

> As is customary in this industry prototype hardware samples were made and tested before tooling commenced. In order to save time a number of recliner chairs were bought that contained plaintiff's "Wall Hugger" units. These units were removed and components adapted, modified and in association with other components hand made by defendant were fabricated into defendant's new "Wall Rester" system. These prototypes were completed early in 1974.
>
> As is customary in the industry the prototype models were shown to long standing and good customers of defendant to determine if the customers were interested in buying these "Wall Rester" units. The representations made to customers was [sic] simply that they were being shown pre-production prototypes; that tooling was being prepared; and, that the hardware made by or for defendant could be delivered in about three months.

manufacture, whether or not modified by [Super Sagless] which [Super Sagless] had been using as samples in connection with the solicitation of orders for sliding recliner hardware". Super Sagless is now in substantial compliance with this directive.

15. Super Sagless has now arranged to manufacture its own slider recliner hardware, without making use of any part actually of Middletown manufacture, although the hardware so manufactured has been designed from and substantially duplicates the Middletown hardware. Super Sagless has approximately 14,000 sliding recliner hardware units of its own manufacture in its present inventory. This hardware sells for about $11.00 per unit, and has an aggregate market value of $154,000.

## CONCLUSIONS OF LAW

1. This court has diversity jurisdiction of this action, 28 U.S.C. § 1332(a); also jurisdiction under the Trademark Act of 1946, 15 U.S.C. § 1051 et seq. and the judicial code, 28 U.S.C. § 1338. See L'Aiglon Apparel v. Lana Lobell, Inc., 214 F.2d 649, 650 (3rd Cir. 1954); Norman M. Morris Corporation v. Weinstein, 466 F.2d 137, 141–142 (5th Cir. 1972); Alum-A-Fold Shutter Corp. v. Folding Shutter Corp., 441 F.2d 556 (5th Cir. 1971).

■ 2. The use by Super Sagless of Middletown's slider recliner hardware as a prototype from which to sell its own hardware to the customers above mentioned under the circumstances hereinbefore described violated the Trademark Act of 1946, and particularly 15 U.S.C. § 1125(a) in that the use of said hardware in the manner mentioned constituted a false designation of origin, and a

false description and representation, as prohibited by said Act.[2]

■ 3. Middletown is protected by Section 1125(a) and has a right of action thereunder against Super Sagless for unfair competition. PIC Design Corporation v. Sterling Precision Corp., 231 F.Supp. 106, 114 (D.C.S.D.N.Y. 1964).

■ 4. The slider recliner hardware manufactured by Middletown is not protected by a patent and is therefore within the public domain, affording Super Sagless the legal right to copy the design and sell hardware almost identical to that sold by Middletown. Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661, 667 (1964); Compco Corp. v. Day-Brite Lighting, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964). The prototype used by Super Sagless to market its hardware was not, however, a copy or reproduction of Middletown slider recliner hardware, but for all practical purposes, was in fact the product of Middletown. The failure of Super Sagless to make this known to its customers resulted in a misrepresentation of the origin of the hardware, and brings Super Sagless within the condemnation of Section 1125(a).

## PRELIMINARY RELIEF

■ A. Super Sagless has recovered all but one of the twenty slider recliner hardware units of Middletown manufacture pursuant to the court's prior order. Super Sagless should not be permitted to use this hardware, or any other such hardware as it might hereafter acquire to solicit sales for hardware of Super Sagless manufacture. To permit such activity to continue poses a potential

2. 15 U.S.C. § 1125(a) provides in pertinent part:

Any person who shall . . . use in connection with any goods . . . a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods . . . to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce . . . shall be liable to a civil action . . . by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

probability that Middletown will suffer irreparable damage through the loss of customers and sales of unknown magnitude. The court is of the opinion that Middletown has demonstrated that there is a reasonable probability that it will prevail on the merits as to this issue and is entitled to injunctive relief in regard thereto.

■ B. Middletown also seeks injunctive relief to restrain Super Sagless from completing the sale of the hardware manufactured by Super Sagless to the six mutual customers where the orders were obtained through the sample hardware in question. In support of this request, Middletown has presented to the court the affidavit of its Field Sales Engineer, Goff, and its Vice President of Marketing, Robert C. Farrar, to establish the fact that representatives of three of the six mutual customers of the parties advised Middletown that they have accepted the misrepresentations of Super Sagless as true and were thereby misled into believing that Super Sagless had hardware available for purchase by the customer and that Super Sagless had the capability of manufacturing the hardware in substantial quantities. In opposition to these affidavits Super Sagless presented the affidavits of two of the three individuals mentioned by the officials of Middletown. Each of the affiants stated that neither he nor his company was misled or deceived into believing that the prototype shown to him by Super Sagless was entirely made by Super Sagless, or that he and his company believed that Super Sagless had hardware available for purchase by his company at the time they saw the prototype made before actual tooling commenced. Further, each affiant stated that it was irrelevant as to whether or how Super Sagless obtained the prototypes or specifically that parts may have been taken from Middletown's "Wall Hugger" unit; that he relied upon the ability and integrity of Super Sagless to reproduce and deliver the merchandise consistent with its policy regardless of the origin of the prototype. Super Sagless has represented to the court that a similar affidavit was not obtained from the representative of the third customer named in the Farrar affidavit because of the shortness of time.

■ C. Preliminary injunctions are not routinely granted, being an extraordinary remedy, and should be denied unless the right to relief is clear. 11 Wright & Miller, Federal Practice and Procedure: Civil § 2942, p. 368. Injunctive relief also may be refused when the order would work a hardship on third persons. Id. at 378.

D. The record reflects that at least two of the six mutual customers in question are not concerned with the fact that the prototype shown them included Middletown's hardware and are content to rely upon Super Sagless' integrity to manufacture and deliver the hardware in question. The record also reflects that variations have been made in the hardware to accommodate the furniture frames utilized by the different purchasers, and that a cancellation of the subject sales would result in extensive damages to each of them. Additionally, Super Sagless has quite a quantity of the hardware on hand with which to meet its sales commitments.

E. Taking into consideration all the equities in the action and the reasonable probability that third persons might suffer from the cancellation of the sales involved, the court concludes that a preliminary injunction should not issue to restrain Super Sagless from completing the sales heretofore made by it to the six customers aforesaid.

F. The court finds, in light of the limited relief granted Middletown on its motion for a preliminary injunction, that a bond in the sum of $5,000 is sufficient.

Counsel for Middletown shall prepare and submit to the court at the Greenville Division within ten days an appropriate order for entry by the court.