**L & L WHITE METAL CASTING CORP., Plaintiff,**

v.

**Max JOSEPH, Individually and d.b.a. L & M Products Co., et al., Defendants.**

No. 71–C–1668.

United States District Court, E. D. New York.

Jan. 15, 1975.

Sparrow & Sparrow, Mark H. Sparrow, New York City, for plaintiff; Jacobs & Jacobs, P. C., New York City, of counsel.

Darby & Darby, New York City, for defendants Max Marcus, Aetna Casting Corp., M. MacKeller and King Kasters, Inc.; Michael J. Sweedler, New York City, of counsel.

Upham, Meeker & Weithorn, New York City, for defendants Ross Strober and Camelot Lighting Co., Inc.; Howard J. Zuckerman, New York City, of counsel.

Lifshutz & Kahn, New York City, for defendant Burt Tudor.

BARTELS, District Judge.

In this non-jury action plaintiff claims that eleven of the defendants' metal castings and twenty-four photographs of the plaintiff's products appearing in the defendants' trade catalog infringe plaintiff's copyrights in violation of Title 17 of the United States Code. In addition, the plaintiff charges unfair competition by reason of the defendants' use of the same photographs of the plaintiff's products in violation of 15 U.S.C. § 1125. Jurisdiction is based on 28 U.S.C. § 1338. Most of the facts are admitted and may be stated briefly as follows.

Plaintiff, L & L White Metal Casting Corp., is a New Jersey corporation en-

gaged in the design, manufacturing, and sale of metal castings used as components in the manufacturing of lamp and lighting fixtures. Defendant Max Marcus is a resident of New York and is president, director, and half owner of the defendant Aetna Casting Corp., which is a New York corporation engaged in the manufacturing and sale of its own metal castings for lamp and lighting fixtures as well as the resale of castings manufactured by others.

Defendants admit that the copyrights covering all of plaintiff's castings involved in this action are valid and that eight of the defendants' castings infringe said copyrights, but deny infringement as to the remaining three defendants' castings. Each of these three castings are produced from molds, purchased from a third party, which originally produced castings identical to those covered by the plaintiff's copyrights. In an attempt to avoid infringement, the defendants altered each mold with the result that certain elements of design in the original molds were either eliminated or changed and new elements of design were added.

As to the twenty-four photographs contained in the defendants' trade catalog, the defendants deny the validity of the copyrights but admit infringement if valid. When the plaintiff decided to publish photographs of its castings sometime between 1935 and 1965, it published photographs of all castings manufactured by the plaintiff to that date but this original catalog was never copyrighted. Approximately every year thereafter plaintiff published a catalog supplement containing photographs of new castings offered for sale by the plaintiff. Since 1965 the plaintiff has obtained copyrights on the annual supplements and at the trial it produced certificates of copyright registration issued by the United States Patent Office covering the three supplements for the years 1965, 1967, and 1968. All of the supplements are consecutively paginated so that they may be inserted at the back of the original catalog, which is struc-

tured as a loose-leaf booklet. Upon publication, each supplement is mailed to each of the plaintiff's existing customers with instructions to insert it at the back of the main catalog.

When the plaintiff receives a new customer a complete catalog, including all up-to-date supplements, is sent to the customer. The first page of each of the above-mentioned copyrighted catalog supplements displays a notice of copyright in the following form: "Copyright © L & L WMC (date)." In the 1965 supplement the exact same notice appears on every page except the last. No supplement was published in 1966 but in the 1967 supplement the same notice appears on every page except for the fact that the date has been omitted on all pages except the first. In the 1968 supplement the same notice appears on every page except that the date varies from page to page. There is no notice of copyright anywhere else in the catalog and when the supplements are inserted into the original catalog, the first appearance of any notice is on page 109, which is the first page of the 1965 supplement. Defendants used twenty-four of the photographs contained in the plaintiff's entire catalog but only seven of them appeared in the copyrighted supplements.

## THE CASTINGS

The castings in this case, it will be recalled, are castings of lamp bases or other components used in the designing of lamps. Since the defendants admit that eight of their castings infringe the plaintiff's copyrights, the only issue as to the infringement of the plaintiff's copyrights on its castings is whether the defendants' three castings numbered 55, 134, and 135 infringe plaintiff's castings numbered 8662, 8881, and 8884, respectively.

A copyright infringement depends not upon identity but upon whether a substantial similarity exists between the copyrighted work and the alleged copy. It is an "ad hoc" determina-

tion and rests upon the facts of each individual case. To make such a determination the Court must decide "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." Ideal Toy Corp. v. Fab-Lu Ltd. (Inc.), 360 F.2d 1021, 1022 (2d Cir. 1966). See also Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co., Inc., 509 F.2d 64, 2d Cir., 1974; Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc., 490 F.2d 1092 (2d Cir. 1974); Concord Fabrics, Inc. v. Marcus Brothers Textile Corp., 409 F.2d 1315 (2d Cir. 1969). Obviously, such a test cannot be subjected to mathematical determination and rests, to a great extent, upon the powers of observation and common sense of the court. It is pertinent to remember that the test for copyright protection is not the same as the test for infringement avoidance. While copyright protection for originality exists if a new element is introduced which is novel or original as compared to the previously known art or material, the introduction of such a new element to the original article will not suffice for infringement protection if the ordinary lay observer would still regard the two articles as substantially similar. Puddu v. Buonamici Statuary, Inc., 450 F.2d 401 (2d Cir. 1971); Uneeda Doll Co., Inc. v. Regent Baby Products Corp., 355 F.Supp. 438 (E.D. N.Y.1972). Thus, the problem of infringement is not a simple one. While substantial similarity does not require identity or the copying of every detail, it is satisfied if the hypothetical "average lay observer" would be convinced, after a comparison of the two articles, that the accused article has been taken from the work of the copyrighted product so that the essential features of the accused article retain the overall appearance and the aesthetic appeal of the copyrighted product. Dymow v. Bolton, 11 F.2d 690, 692 (2d Cir. 1926); Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487 (2d Cir. 1960).

Referring to the three disputed castings, we find that they were made from copies of the plaintiff's molds which were deliberately altered to change certain elements of design in order to hide the fact of copying and thereby avoid infringement. The question remains whether, after these changes, the castings produced from these molds retained a substantial similarity to the plaintiff's castings.

### Defendants' Casting Number 55

■ Defendants' casting number 55 is alleged to violate plaintiff's copyrighted casting number 8662, which consists of a small "break" piece used in the design of lamps as a crown at the top of the lamp column. In the defendants' casting the leaf design found on the plaintiff's casting was completely removed and replaced by a design consisting of a geometric pattern of circles and semicircles between two parallel horizontal bands. While the basic urn-shape was altered slightly by the partial filling in of the spaces between the fingerlike extensions at the top of the casting, the basic shape and dimensions of the plaintiff's casting remain the same. In addition, the flutes on the casting's neck have been retained by the defendants. Looking at the two, however, we believe that the changes in design were substantial enough that an average observer would not conclude that the defendants' product was copied from the plaintiff's casting.

### Defendants' Casting Number 134

■ Plaintiff's casting number 8881, the copyright of which is claimed to be infringed by the defendants' casting number 134, is a trumpet bell shaped "column" casting used as a decorative central column of a lamp. In their casting number 134 the defendants retained the trumpet bell shape and dimensions of the plaintiff's casting and the identical leaf design directly under the bobeche. In addition, the protruding scroll work along the sides of the casting

which form four corners was completely retained with only simplification of design. However, the defendants completely eliminated the elaborate scroll work on the sides of the casting and replaced it with four flat parallel horizontal bands containing an "X" design in a field of star-shaped impressions. Defendants also changed the shape and design of the bobeche at the top of the casting and a new design was added where none appeared on the plaintiff's casting. Defendants have changed enough of the design on the plaintiff's casting so that the resulting product does not retain sufficient similarity to lead the average observer to conclude that the defendants' product was appropriated from the plaintiff's casting. True it is, there is similarity but there is not substantial similarity.

### Defendants' Casting Number 135

■ Plaintiff alleges that the defendants' casting number 135 infringes the copyright on its casting number 8884, which is a "base" casting used in the designing of lamps as a base for the lamp. In their casting the defendants changed much of the design on the flat top of the plaintiff's casting but the new design is essentially of the same style and effect as that on the plaintiff's casting. Defendants also attempted to change the design on the sides and along the base of the casting but the new design remains very similar to that which it replaced and, in fact, the large central fleur-de-lis of the plaintiff's casting has been retained without change. This basic overall similarity of design, when combined with the unique and distinctive shape of the casting—a feature which was not changed, leads to the conclusion that the two castings are substantially similar.

In short, the defendants are guilty of nine infringements of the plaintiff's castings.

## THE CATALOG PHOTOGRAPHS

Plaintiff also contends that the defendants, by copying photographs con-

tained in the plaintiff's original catalog and the supplements, infringed its copyrights. In reply, defendants challenge the validity of these copyrights on the ground of defective notice in that (1) initials are used in violation of 17 U.S.C. § 19, and (2) the notice does not appear on the title page as required by 17 U.S. C. § 20. The obvious purpose of the notice provisions of Title 17 is to inform the public that a copyright is claimed and to prevent persons who are unaware of the existence of the copyright from incurring infringement penalties. Goodis v. United Artists Television, Inc., 425 F.2d 397 (2d Cir. 1970); Uneeda Doll Co. v. Goldfarb Novelty Co., 373 F.2d 851 (2d Cir.), cert. dismissed, 389 U.S. 801, 88 S.Ct. 9, 19 L.Ed.2d 56 (1967). Generally courts, and especially in this Circuit, have afforded protection to persons who have "substantially complied" with the notice provisions. Uneeda Doll Co. v. Goldfarb Novelty Co., *supra,* 373 F.2d at 853, and cases cited therein.

### A

■ The first defect claimed by the defendants is that the initials "L & L WMC" are used, rather than the full name of the plaintiff-corporation, in violation of 17 U.S.C. § 19, providing that the "name of the copyright proprietor" appear in the notice. Although 17 U.S. C. § 19 only specifically authorizes the use of the proprietor's initials in certain types of copyrightable works, not including books, the "name" requirement has been construed to mean, for the purpose of all copyrightable works including books, that the actual name of the proprietor is not necessary so long as another widely recognized name, nickname, or other generally accepted alternative designation is used. Nimmer On Copyright, § 86.2 (1974 ed.). L & L White Metal Casting Corp. v. Cornell Metal Specialties Corp., 353 F.Supp. 1170 (E. D.N.Y.1972), decided, and the certificate to do business under the initials of "L & L WMC" filed by the plaintiff with the State of New Jersey in 1963 confirms, that the initials "L & L WMC" are so

widely known in the trade that they qualify as an acceptable alternative designation for the plaintiff-corporation. See also Herbert Rosenthal Jewelry Corp. v. Grossbardt, 436 F.2d 315 (2d Cir. 1970); Puddu v. Buonamici Statuary, Inc., *supra*. For these reasons we conclude that there is no merit to defendants' first claim.

### B

■ ■ The second defect claimed is that the copyright notice in the plaintiff's entire catalog, with all supplements added, does not appear until page 109, which is the first page of the 1965 supplement, in violation of 17 U.S.C. § 20, which provides that, in the case of books, the copyright notice must appear on the "title page or the page immediately following." This requirement of title page notice must be strictly complied with and failure to follow the statute literally will render the notice defective and invalidate the copyright protection. Peter Pan Fabrics, Inc. v. Martin Weiner Corp., *supra*; American Fabrics Co. v. Lace Art, Inc., 291 F.Supp. 589 (S.D.N.Y.1968); United Thrift Plan v. National Thrift Plan, 34 F.2d 300 (E.D. N.Y.1929); Nimmer On Copyright, § 87.2 (1974 ed.). Consequently, the notice of copyright appearing on page 109 of the plaintiff's catalog is insufficient to comply with the requirements of 17 U.S.C. § 20, and any copyright claimed for the entire catalog is clearly invalid. However, each individual supplement is published separately and as such the notice not only appears on the title page but on every page thereof. Each supplement, as an individual unit, clearly complies with 17 U.S.C. § 20. Thus, the question posed is whether the photographs contained in the supplements lose their copyright protection by reason of the fact that the supplements are inserted into a loose-leaf type book which itself is not copyrighted although each supplement still bears a valid notice of its prior copyright.

■ To resolve this question it is necessary to construe the title page no-

tice requirement of § 20 of 17 U.S.C. together with § 7 of 17 U.S.C. Section 7 provides that compilations "shall be regarded as new works subject to copyright under the provisions of this title; but the publication of any such new works shall not affect the force or validity of any subsisting copyright upon the matter employed or any part thereof." When a person combines copyrighted and uncopyrighted material without obtaining a copyright on the new compilation, it is necessary, in order to preserve the protection on the previously copyrighted material, that a copyright notice appear in the new compilation. Sieff v. Continental Auto Supply Inc., 39 F. Supp. 683 (D.Minn.1941); Nimmer On Copyright, § 89.3 (1974 ed.). For this purpose it is sufficient that the copyright notice in the new compilation required by § 20 appear on the individual page for which copyright protection is claimed. Siewek Tool Co. v. Morton, 128 F.Supp. 71 (E.D.Mich.1954). The rationale for this requirement is that a person without knowledge of the material prior to their compilation would be unable to determine which parts of the compilation were protected and which parts were not. Here the plaintiff combined its new copyrighted supplements with its original uncopyrighted catalog but as to the supplements the copyright notice was printed in boldfaced type on every page so that anyone looking through the catalog could easily identify the notice on the supplements. In fact, this procedure is recommended by the United States Copyright Office with regard to periodical loose-leaf publications such as the plaintiff's catalog. Copyright Office Circular 65 (Nov. 1970). For these reasons, the purpose of the notice provisions of § 20 has been fulfilled and their terms have been substantially complied with, and the plaintiff is, therefore, protected by the copyrights on its supplements. Since the defendants admit infringement of each of the validly copyrighted photographs, they are guilty of seven infringements, one for each of the seven photographs

appearing in the plaintiff's copyrighted supplements.

## UNFAIR COMPETITION

 Plaintiff does not claim that the defendants are guilty of common law unfair competition. It does, however, claim unfair competition in violation of 15 U.S.C. § 1125(a) by reason of the defendants' use of photographs of the plaintiff's castings for the purpose of selling the defendants' products.[1] The purpose of § 1125(a) was to create a new federal cause of action for false representation of goods in commerce in order to protect persons engaged in commerce from, among other things, unfair competition, fraud and deception which had theretofore only been protected by the common law. 15 U.S.C. § 1127; Norman M. Morris Corporation v. Weinstein, 466 F.2d 137 (5th Cir. 1972); Natcontainer Corporation v. Continental Can Co., Inc., 362 F.Supp. 1094 (S.D.N.Y.1973). While this section is broad enough to cover situations involving the common law "palming off" of the defendants' products by the use of the plaintiff's photographs, Crossbow, Inc. v. Dan-Dee Imports, Inc., 266 F.Supp. 335 (S.D.N.Y.1967); National Dynamics Corp. v. John Surrey, Ltd., 238 F.Supp. 423 (S.D.N.Y.1964), it is also comprehensive enough to include other forms of misrepresentation and unfair competition not involving "palming off." American Heritage Life Ins. Co. v. Heritage Life Ins. Co., 494 F.2d 3 (5th Cir. 1974); Geisel v. Poynter Products Inc., 283 F.Supp. 261 (S.D.N.Y.1968); Zandelin v. Maxwell Bentley Mfg. Co., 197 F.Supp. 608 (S.D.N.Y.1961). In order for the plaintiff to succeed in its claim

under this section, it must show that the casting depicted in the photograph is so distinctively associated with the plaintiff that it operates much in the manner of a trademark and that the use of the photograph is likely to result in deception or confusion as to the representation or origin of the goods sold. General Pool Corp. v. Hallmark Pool Corp., 259 F.Supp. 383 (N.D.Ill.1966).

 Plaintiff offered no proof that consumers would believe, by looking at the plaintiff's photographs, that they were purchasing anything other than the defendants' own products even though they were imitations of the plaintiff's castings. Plaintiff claims that the mere fact that the defendants acted as jobbers in reselling castings manufactured by others was sufficient evidence that consumers believed that they were purchasing the plaintiff's products. The weakness of this argument lies in the lack of evidence that the castings depicted in the photographs were generally recognized in the trade as the plaintiff's castings. The plaintiff also claims that the fact that some of the castings depicted in the photographs were copyrighted, establishes a general association of the castings with the plaintiff in the minds of consumers even though the copyright notice on the casting did not appear in the photograph. Again there was no evidence to substantiate this claim and consequently there is no basis for awarding damages for the plaintiff's claim of unfair competition.

## DAMAGES

The only question remaining concerns damages as to the nine infringements on

---

[1]. Section 1125(a) of 15 U.S.C. provides:
"Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or rep-

resentation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

the castings and the seven infringements on the photographs.

Section 101(b) of Title 17 of the United States Code provides that, in the case of copyright infringement, the copyright proprietor is entitled to:

> "such damages as the copyright proprietor may have suffered due to the infringement, as well as all the profits which the infringer shall have made from such infringement, and in proving profits the plaintiff shall be required to prove sales only, and the defendant shall be required to prove every element of cost which he claims, or in lieu of actual damages and profits, such damages as to the court shall appear to be just, and in assessing such damages the court may, in its discretion, allow the amounts as hereinafter stated, . . . and such damages shall in no other case exceed the sum of $5,000 nor be less than the sum of $250."

The literal construction of this language permits an award of both actual damages and the infringer's profits, although it has been questioned whether this is in accord with the legislative intent. Nimmer On Copyright, § 151 (1974 ed.). Some courts have accordingly awarded damages or profits in the alternative. Universal Pictures Co. v. Harold Lloyd Corp., 162 F.2d 354 (9th Cir. 1947); Gordon v. Weir, 111 F.Supp. 117 (E.D.Mich.1953), affirmed, 216 F.2d 508 (6th Cir. 1954). The Second Circuit, after canvassing the authorities, has adopted the harsher "cumulative" rule, Thomas Wilson & Co. v. Irving J. Dorfman Co., 433 F.2d 409 (2d Cir. 1970), relying upon the rationale of F. W. Woolworth v. Contemporary Arts, Inc., 344 U.S. 228, 233, 73 S.Ct. 222, 97 L. Ed. 276 (1952). See also Alouf v. Expansion Products, Inc., 417 F.2d 767 (2d Cir. 1969); Peter Pan Fabrics, Inc. v. Jobela Fabrics, Inc., 329 F.2d 194 (2d Cir. 1964).

█ In attempting to compute damages with respect to the nine infringements, we are confronted with skimpy, inadequate and unacceptable proof. Plaintiff, in order to establish damages in the form of lost profits, offered the testimony of its secretary-treasurer, Louis Loevsky, together with certain "Estimate Sheet-Slush" tables. These tables, through columns and horizontal lines, purported to set forth in a graphical manner various items of variable costs, overhead, and a profit factor attributable to the production of an estimated 1,000 units of each casting. They were not corroborated or supported by any records for the years in question but were predicated upon some subsequent records and the memory, experience and judgment of Loevsky covering the period in question. They may be described as *ex post facto* estimates for the years 1968 to 1970, predicated upon retroactive adjustments of the 1973 costs upon the assumption that the yearly cost increases since the relevant years were proportionate to the yearly price increases. They rested largely, if not wholly, upon Loevsky's memory and judgment and were not subject to check by any present records for the pertinent period. Such speculative tables cannot be accepted as a foundation for a computation of damages.

█ Following this same approach, plaintiff offered the testimony of Dr. Peter M. Gutmann, Professor of Economics and Finance at Baruch College. He gave his opinion concerning the amount of profits the plaintiff would have made upon the infringed castings sold by the defendants if sold by the plaintiff. He stated that this profit would have been approximately 37% of the plaintiff's sales price on each infringing casting sold by the defendants. He reached this conclusion by eliminating the overhead costs, as shown by the tables, for each unit sold by the defendants above the number of same units theretofore sold by the plaintiff. This left only the amount of the variable costs chargeable to these additional units, thus increasing the profit alloca-

ble to such additional units to 37% of plaintiff's sales price as shown by the tables.[2] But in reaching this conclusion Dr. Gutmann relied on the "Estimate Sheet-Slush" tables, which, as we said above, were too speculative to be accepted in the computation of damages.[3]

 Plaintiff then resorted to the alternative approach by attempting to prove the profits which the defendants made as a result of their infringement. To do this they were only required to show gross sales of the infringing products which would then shift the burden to the defendants to prove every element of cost allocable thereto. However, the plaintiff attempted to satisfy its obligation by showing, through the defendants' invoices, gross sales of not only the infringing products but of a number of non-infringing products without any testimony showing the proper breakdown of those sales allocable to the infringing products. There were a number of the defendants' invoices showing all gross sales of the infringing castings together with some non-infringing sales and theoretically it might have been possible for the court to select from these invoices the gross sales of the infringing products. Such selection, however, would be uncorroborated by any testimony as to the accuracy of the selection or tabulation. While there was a summary sheet purporting to show the gross sales of the infringing items by the defendants as compared to gross sales of the same items to the same customers by the plaintiff, it was introduced only for the purpose of establishing that sales of the infringing prod-

ucts were made by both the plaintiff and the defendants to the same customers. No testimony or verification of the figures contained in this summary sheet was offered.[4] Thus, the court was left with proof of sales inadequately related to the infringing products.

 Turning to the seven infringements of the plaintiff's photographs, the plaintiff offered no proof whatsoever as to its actual damages or the defendants' profits. We must rely, therefore, upon the "in lieu" clause of the statute in fixing damages for both the casting and photograph infringements. F. W. Woolworth v. Contemporary Arts, Inc., *supra*; American Visuals Corp. v. Holland, 261 F.2d 652 (2d Cir. 1958); Alouf v. Expansion Products, Inc., *supra*; L & L White Metal Casting Corp. v. Cornell Metal Specialties Corp., *supra*. Although actual damages and profits were not proven, there is no doubt that there were such damages and profits and that the infringements were willful. Under the statute the court, in its discretion and in accordance with its sense of justice, may allow damages not in excess of $5,000, nor less than $250, for each infringement. In calculating damages under this clause, the court finds the defendants to be liable in the amount of $2,500 for each of the nine casting infringements, aggregating $22,500, and for $250 for each of the seven photograph infringements, aggregating $1,750. In addition, $2,500 is awarded to the plaintiff as reasonable attorney's fees. The court does not find the defendants' conduct so outragous or egregious as to jus-

---

2. Dr. Gutmann described this approach as a century old economic theory to the effect that after the production of a fixed number of units sold by the plaintiff, the cost of manufacturing additional units (in this case those sold by the defendants) would be reduced by the amount of overhead ordinarily allocable to such units.

3. In passing, it should be noted that the plaintiff offered no evidence that it would have made the sales made by the defendants inasmuch as the defendants' sales were not limited to the plaintiff's customers.

4. Defendants, assuming that some of the plaintiff's proof could be allocated to the infringing sales, attempted to reduce their profits by showing costs attributable to the infringing sales by way of profit and loss statements for the years in question. These profit and loss statements included costs for sales of all of the defendants' products and, while attributable in part to the sales of the infringing products, were not sufficiently separated from the costs of the other non-infringing products.

tify punitive or exemplary damages, although their conduct is to be condemned. See Smith v. Little, Brown & Co., 396 F.2d 150 (2d Cir. 1968); Szekely v. Eagle Lion Films, 140 F.Supp. 843 (S.D. N.Y.1956), affirmed, 242 F.2d 266 (2d Cir.), cert. denied, 354 U.S. 922, 77 S.Ct. 1382, 1 L.Ed.2d 1437 (1957).

The above shall constitute the court's findings of fact and conclusions of law, pursuant to Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.

Judgment should be entered against the defendants, Max Marcus, individually and d.b.a. Aetna Casting Co., and Aetna Casting Corp., in the amount of $26,750 and (1) permanently enjoining them from manufacturing or selling any of the nine infringing castings and from using the seven infringing photographs, and (2) ordering them, pursuant to 17 U.S.C. § 101(d), to deliver up for destruction all copies of the nine infringing castings and any and all molds in their possession now used for producing the same.

So ordered.